HILL, EXECUTRIX OF THE ESTATE OF SHAW, APPELLANT, *v.* ALLSTATE
INSURANCE COMPANY, APPELLEE.

[Cite as Hill *v.* Allstate Ins. Co. (1990), 50 Ohio St. 3d 243.]

(No. 88-1740—Submitted November 14, 1989—Decided April 25, 1990.)

*St. Marie, St. Marie, Noll & Couch Co., L.P.A.*, and *Carl F. Noll*, for appellant.

*Miraldi & Barrett Co., L.P.A., David P. Miraldi, Sonnenschein, Carlin, Nath & Rosenthal, William T. Barker* and *Steven M. Levy*, for appellee.

*Keating, Ritchie & Norwine* and *Kevin L. Swick*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

HOLMES, J. The only issue presented to this court is whether underinsured motorist coverage is available to an insured's estate and next of kin on a wrongful death claim, where the insured's policy limits are identical to those of the tortfeasor. For the reasons which follow, we answer such query in the negative, and affirm the court of appeals.

In order to determine whether or not appellant is entitled to underinsured coverage we must determine whether the accident involved an underinsured vehicle. In mandating underinsured motorist provisions in every automobile insurance policy, R.C. 3937.18(A)(2) states:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds · and insurance policies covering persons liable to the insured."

Simply put, the underinsured motorist statute requires an insurer to provide coverage to its insured when the tortfeasor's coverage is *less* than the limits of the insured's uninsured motorist coverage at the time of the accident.

Appellant asserts that this case is controlled by the recent decision of this court in *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089. In *Wood* this court held that each wrongful death beneficiary has a separate claim, compensable up to the subject insurance policy's per occurrence underinsured motorist coverage limits, even though the policy limited recovery for all damages for injury or death of one person to a *single* limit of liability.

*Wood* is distinguishable and not applicable to our determination of this

case. In *Wood* the tortfeasor's liability insurance policy had per person limits of $50,000 and per occurrence limits of $100,000, whereas the plaintiff's policy in that case had underinsured motorist coverage of $100,000 per person and $300,000 per occurrence.

The facts of *Wood* are not the facts here. At the time of the accident, the tortfeasor here had bodily injury liability coverage of $50,000 per person and $100,000 per occurrence — the same limits as those of Shaw's Allstate policy's underinsurance motorist coverage. Specifically, Shaw's Allstate policy provided, in part:

"SS UNINSURED MOTORISTS BODILY INJURY $50,000 EACH PERSON — $100,000 EACH ACCIDENT

"\* \* \*

"*An uninsured auto is:*

"\* \* \*

"(5) An underinsured auto which has liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury liability by the financial responsibility laws of Ohio, but *less than the limits of liability for coverage SS of this policy.*" (Emphasis added.)

The decedent's estate was able to recover the full $50,000 to which it was entitled under the tortfeasor's policy. Accordingly, pursuant to both the plain meaning of Ohio's underinsurance motorist statute and the unambiguous terms of the subject Allstate policy, no underinsurance motorist coverage was available to the decedent's estate here because the "limits of coverage available for payment" to the decedent's estate were not "less than the limits for" the decedent's underinsured motorist coverage "at the time of the accident."[2] Thus, as shown in the above analysis, unless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits set forth in the tortfeasor's liability insurance coverage.[3] See *Hagen* v. *J.C. Penney Cas. Co.* (1984), 16 Ohio App. 3d 218, 220, 16 OBR 234, 236, 475 N.E. 2d 177, 179 (In citing *Buckeye Union Ins. Co.* v. *Wallace, supra,* fn. 3, the court

---

[2] This same result was reached by a unanimous panel in *Buckeye Union Ins. Co.* v. *Wallace* (Mar. 27, 1981), Lucas App. No. L-80-146, unreported, motion to certify overruled (July 1, 1981), case No. 81-778, where the court construed a similar situation to the one before us in examining an insured's policy with identical liability limits to the tortfeasor's policy, and the insured's damages exceeded the limit on the tortfeasor's policy. The court denied the insured's claim, stating: "The literal terms of the clause state that, for a vehicle to be underinsured, it must carry a lesser limit than the limit imposed by the terms of the policy under which recovery is alleged. In this case the limits on the tortfeasor's policy were not less than, but equal to, the limit on the appellant's policy. Thus, by a plain reading of the statute, incorporated

into the endorsement, the appellant may not recover under the policy for the tortfeasor's underinsurance, because, although the tortfeasor may be underinsured in relation to the appellant's damages, he is not underinsured for the purposes of the statute and policy endorsement. We find the contract clause and statute on this point to be a clear unambiguous statement of the law." *Id.* at 5.

[3] Therefore, under both the Ohio underinsured motorist statute and the relevant Allstate policy, there plainly can be no underinsured motorist coverage unless, at the time of the accident, the underinsured motorist limits of liability contained in the insured's policy are *greater* than the liability coverage limits of the tortfeasor's policy. Here, that was simply not the case.

held that underinsured motorists liability insurance precludes coverage where the limits of liability of the insured's policy are *identical* to the limits of the tortfeasor's policy.); *Ohio Cas. Ins. Co.* v. *Yoby* (1985), 23 Ohio App. 3d 51, 54, 23 OBR 96, 98, 491 N.E. 2d 360, 363 ("[I]n case of inadequate insurance, the underinsurance provision would be triggered, but only if the tortfeasor's coverage is *less* than the underinsured policy limits. Underinsured motorist coverage is an option by which an insured may voluntarily predetermine the amount of insurance he desires to protect him in the event of injury by a negligent motorist who has liability insurance in an amount *less* than that predetermined amount."); *Ware* v. *Nationwide Ins. Co.* (1986), 33 Ohio App. 3d 74, 75, 514 N.E. 2d 440, 441 (When the limits of the tortfeasor's liability insurance coverage and the limits of the injured party's underinsurance coverage are equal, R.C. 3937.18(A)(2) is not applicable, even though multiple wrongful death claimants are involved.). This is in line with the public policy consideration of assuring that those persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist. See *Ware, supra; James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 389, 18 OBR 440, 443, 481 N.E. 2d 272, 275.[4]

We do not agree with appellant's argument that she would have been in a superior position if the tortfeasor had carried no liability insurance. While *Wood, supra,* establishes that wrongful death beneficiaries have separate *claims*, the policy language here applies the single limit ($50,000) to "all damages arising out of" a *single bodily injury* (no matter how many separate claims may be involved). See *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716, paragraph one of the syllabus. The statute clearly permits appellee to contract in this fashion.

Alternatively, appellant maintains that under this court's prior holding in *Wood,* each wrongful death beneficiary has a separate underinsured claim regardless of whether the insured's policy limits are equal to the tortfeasor's policy limits. Specifically, appellant proposes that "[t]he coverage mandated by R.C. 3937.18(A)(2) does not depend solely upon a comparison between the single person liability policy limits of the tortfeasor and the single person uninsured policy limits of the insured party * * *. Rather, that coverage is determined by a comparison between the portion of the tortfeasor's limits 'available for payment to the insured' and the limits of the uninsured coverage available to the separate claims of all those who are insureds under the uninsured/underinsured motorist provision of the applicable policy." We disagree. In effect, what appellant asks this court to fashion is an excess accident insurance

---

[4] A motor vehicle insurance policy could conceivably provide more benefits than those required to be offered by R.C. 3737.18(A)(2); that is, not require that the limits of coverage available from the underinsured motorist be less than those available to the insured under his underinsured coverage. However, in this case Shaw's Allstate policy defines "underinsurance coverage" as one where the available bodily injury liability coverage is less than the limits of the underinsured coverage. Thus, this policy does not provide benefits which are greater than those required to be offered under the statute.

provision by judicial fiat. Here, Allstate offered no such provision nor did Shaw contract in reliance on such a provision. Shaw contracted for coverage in the event the tortfeasor's liability insurance coverage failed to fully compensate his injuries, so long as the tortfeasor's limits were below the limits of his own policy. In the case *sub judice* the limits are equal and thus appellant has received precisely what Shaw contracted for. Moreover, as noted earlier, *Wood* does not apply where, as a threshold matter, the tortfeasor's liability coverage limits are identical to the insured's underinsured motorist coverage limits.[5] Here, the threshold requirement was not met. Consequently, each wrongful death beneficiary was not entitled to a separate limit of recovery, up to Shaw's policy's per occurrence limit for underinsured motorist coverage.

Finally, even if we were to assume *arguendo* that the wrongful death beneficiaries here had separate viable claims under the *Wood* rationale, they would still be precluded from recovery under the Allstate policy, since their separate claims, if any, should have been filed against Western Reserve, the tortfeasor's insurer. It is of no consequence that the Western Reserve policy limits may have been reached, since there was no underinsurance available to these beneficiaries under the unambiguous terms of the Allstate policy and R.C. 3937.18(A)(2).

Therefore, for the foregoing reasons the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

ALICE ROBIE RESNICK, J., dissenting. I must respectfully dissent as the majority misconstrues our holding in *Wood* v. *Shepard* (1988), 38 Ohio St. 3d 86, 526 N.E. 2d 1089. I also believe the majority has run afoul of the well-reasoned public policy of this state. As the majority correctly points out, the issue before this court is whether underinsured motorist coverage is available to an insured's estate on a wrongful death claim, when the insured's policy limits are identical to the tortfeasor's.

The majority's recitation of the facts is essentially complete. It should be noted, however, that the decedent (Shaw) was survived by his daughter Linda J. Hill, his son, and his father. Linda J. Hill, appellant herein, is the executor of her father's estate and filed the present claim in that capacity on behalf of her father's next of kin. All three of the above persons listed as Shaw's next of kin are indeed covered under Shaw's policy with appellee. This policy specifically defines "insureds" pursuant to the underinsured

---

[5] See, *e.g.*, *Roeser* v. *Westfield Cos.* (June 5, 1986), Cuyahoga App. No. 50661, unreported, motion to certify overruled (Sept. 3, 1986), case No. 86-1110 (where an insured's wife attempted to recover separate underinsured motorist benefits under the insured's policy for her own injuries resulting from the insured's accident with an alleged underinsured motorist who had identical coverage to that of the insured, the court held: "The issue of whether or not a derivative action exists is irrelevant based upon our reliance on *Hagen, supra.* Based upon the finding that the limits of the two policies are identical, appellants have failed to satisfy the threshold requirement of their policy's underinsured provision." *Id.* at 8.).

motorist coverage provision as follows: "**Persons Insured** * * * Any person who is legally entitled to recover because of bodily injury to you, a relative who resides in your household, or an occupant of your insured auto." According to the first portion of this sentence, appellant and Shaw's other next of kin named in the complaint are thus insureds under the policy issued to Shaw by appellee. This conclusion is further supported by R.C. 2125.02(A)(1), which states:

"An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

Appellant and Shaw's other next of kin are clearly "other person[s] who [are] legally entitled to recover because of bodily injury to [Shaw]," as the policy provides. Therefore, it cannot be questioned that under the policy appellant and Shaw's next of kin are insured persons who are rebuttably presumed to have suffered damages as a result of Shaw's death. It is of no consequence that appellant or the persons she represents have suffered no physical injuries. The legislative mandate concerning damages is clear.

Having clarified the identity of the appellant in the present case, I will now turn to the merits. R.C. 3937.18(A)(2) mandates that every auto insurance policy issued in Ohio must contain an underinsured provision, and states as follows:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

Appellee contends, and the lower court held, that the underinsured provision in Shaw's policy does not provide coverage because the tortfeasor's policy and the insured's policy contain identical limits: $50,000 per person and $100,000 per accident. While this argument superficially seems practical, it cannot withstand critical analysis.

In *Wood, supra,* we held at the syllabus that "[e]ach person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the underinsured motorist provision. (R.C. 2125.02 and 3937.18[A][2], construed and applied.)"[6] *Therefore, it*

---

[6] The validity of *Wood, supra,* has been *unanimously* upheld by this court on two different occasions. See *Dick* v. *Allstate Ins. Co.* (1988), 40 Ohio St. 3d 80, 531 N.E. 2d 718; *Bohlen* v. *Mid-American Fire & Cas. Co.* (1988), 40 Ohio St. 3d 80, 531 N.E. 2d 719.

*is clear that appellant's wrongful death claim is not subject to the $50,000 per person limit.* Rather, the claim is subject *only to the per accident limit* contained in Shaw's policy, which is in the amount of $100,000.[7] This crucial distinction is completely disregarded by the majority without even a word, let alone a thorough analysis. Based on our holding in *Wood, supra,* it is axiomatic that under Shaw's policy, appellant is entitled to coverage of up to $100,000.

The tortfeasor's insurance policy provided payment of $50,000. Because appellant is entitled to coverage of up to $100,000 on her father's (Shaw's) policy, the tortfeasor was underinsured for the purposes of appellant's claim. There were two claimants on the tortfeasor's policy, who exhausted the limits of that policy. As the majority opinion correctly notes, it is not clear which limit in the tortfeasor's policy was satisfied (*i.e.,* $50,000 per person or $100,000 per accident). Were there only one claimant filing a claim against the tortfeasor in this case, then the majority's holding would be correct. Given that scenario, a rudimentary comparison of the policies would suffice. However, that is not the case before this court. We are confronted with multiple claimants who filed claims against the tortfeasor's policy. According to the majority's holding today, whenever more than one individual is injured in an automobile accident by a tortfeasor with identical policy limits as that of the injured party, those persons so injured would be better situated if their tortfeasor has no automobile insurance whatsoever.[8]

R.C. 3937.18(A)(2) speaks in terms of limits "* * * available for payment to the insured under * * * insurance policies covering persons liable to the insured. * * *" The proper comparison is thus between the amount available for payment under the tortfeasor's policy and the limit contained in the underinsured motorist provision of Shaw's policy. In situations where

---

[7] For this reason the court of appeals erred in holding that appellant's claim stated only one cause of action for wrongful death.

[8] Consider the following example: Six people are involved in a one-car accident caused by the driver's (tortfeasor's) negligence. Furthermore, assume the tortfeasor and all five passengers died in the accident, and that the tortfeasor's policy provided the same limits as in this case — $50,000/$100,000. The estates of the five passengers would then each assert claims against the tortfeasor's insurance company. Most likely, the tortfeasor's insurance company will pay the per accident limit and, hypothetically, award each decedent's estate $20,000. If each decedent's individual insurance limits are identical to the tortfeasor's insurance limits, under the majority's holding the decedents would not be considered underinsured since their policy limits are identical to the tortfeasor's policy limits. Thus, they *all* would be better off if the tortfeasor had no liability insurance at the time of the accident. The inequity of the majority's holding is obvious.

Furthermore, assume that three of the decedents carried underinsured motorist coverage with limits of $100,000 per person and $300,000 per accident, while two of the decedents carried insurance limits identical to the tortfeasor's ($50,000/$100,000). The decedents' estates with the higher policy limits could, consistent with *Wood, supra,* each potentially recover up to the $300,000 per accident limit. However, the estates of the two decedents with policy limits identical to the tortfeasor's limits would each be limited by the majority's decision today to the recovery of only $20,000 from the tortfeasor's insurance company, a difference of $280,000!

more than one person is injured by the tortfeasor, the amount available for payment must be the amount actually paid under the tortfeasor's policy. Therefore, a simple comparison of policy limits is shortsighted, and as demonstrated above cannot withstand our pronouncement in *Wood, supra*.

By accepting appellee's narrow-minded argument, this court has placed the appellant in a worse position than if the tortfeasor had been completely uninsured. For example, suppose Heugatter (the tortfeasor) had no liability insurance whatsoever. Appellant would then simply file a claim for coverage pursuant to the uninsured provision in *her father's policy*. On the authority of *Wood*, appellant's claim would be subject to the per accident limit of $100,000. Therefore, appellant and Shaw's next of kin would receive as payment the full policy limit of $100,000. According to the majority's holding reached today, they can recover only $50,000. Thus, it is *irrefutable* that appellant has been placed in a worse situation than if her father had been killed by an uninsured motorist.

The majority cites *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d 272, and states that its holding "is in line with the public policy consideration of assuring that those persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been in-

jured by an uninsured motorist." In *James, supra,* we recognized that "[u]nderinsured motorist coverage was first required by statute after the legislature discovered the 'underinsurance loophole' in *uninsured* motorist coverage — *i.e.,* persons injured by tortfeasors having extremely low liability coverage were being denied the same coverage that was being afforded to persons who were injured by tortfeasors having *no* liability coverage. * * *'" (Emphasis *sic.*) *Id.* at 389, 18 OBR at 443, 481 N.E. 2d at 274-275. We went on to state that the purpose of underinsured coverage was to "* * * assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." *Id.* Based on the above analysis and simple mathematical computations set forth above, it is difficult (if not impossible) to see what public policy consideration the majority is "in line with."[9]

The majority states that it does not agree with appellant's argument that "she would have been in a superior position if the tortfeasor had carried no liability insurance." Given the analysis set forth above and recognizing the result reached by the majority, it is no great wonder that the majority does not provide support for this conclusion.[10] Moreover, the majority states that "the policy language here applies the single limit ($50,000) to 'all damages arising out of' a *single bodily*

[9] Considering the ramifications that today's majority opinion will have on Ohio drivers, it may be wise for the General Assembly to reconsider this issue in conjunction with the public policy of this state.

[10] The majority cites *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 540 N.E. 2d 716. However, that case could not be more distinguishable from the present case. *Tomlinson* involved a cause of action for loss of consortium. The court in *Tomlinson* was *not confronted with a wrongful death claim*. Therefore, the holding in *Tomlinson* provides no support for the majority's conclusion, and to suggest that it does completely ignores *Wood, supra*.

*injury* (no matter how many separate claims may be involved).'' This is the *exact type of limitation that was struck down in Wood, supra:* "Each person entitled to recover * * * for wrongful death, and who is an insured * * * has a separate claim and such separate claims *may not be made subject to the single person limit of liability.* * * *" *Id.* at syllabus.

I would hold that when determining whether a tortfeasor is underinsured for purposes of a wrongful death claim, the proper comparison is between the amount available for pay-ment (*i.e.,* the amount paid) to the claimant under the tortfeasor's underinsured motorist coverage provision and the limit of coverage contained in the insured's policy. Because appellant was entitled to the $100,000 per accident limit in her father's policy and the amount paid to her from the tortfeasor's policy was $50,000, appellant has a claim for the remaining amount. The court of appeals' judgment should be reversed and the cause should be remanded.

SWEENEY and DOUGLAS, JJ., concur in the foregoing dissenting opinion.