## In re Estate of Bondurant
*[Cite as 7 AOA 149]*

Case No. 35-CA-89, 39-CA-89, 40-CA-89
*Fairfield County, (5th)*
*Decided October 31, 1990*

*Randy L. Happeney, 144 East Main Street, Lancaster, Ohio 43130-0667, for Plaintiffs-Appellants.*

*James J. Brudny, Jr., 115 West Main Street, #100, Columbus, Ohio 43215-5043, for Defendant-Appellee.*

*Chris C. Tsitouris, 50 West Broad Street, Suite 1118, Columbus, Ohio 43215, and James R. Gallagher, 17 S. High Street, Suite 1100, Columbus, Ohio 43215-3447, for Defendant-Appellee.*

SMART, J.

These are three appeals with common facts and issues. In re: Estate of Christopher Bondurant, 35-CA-89, and the *Estate of Thomas Frazier v. Gulf Insurance Company,* 40-CA-89 were consolidated on appeal.

Cases 39-CA-89 and 35-CA-89 arose out of an automobile accident involving two vehicles in which four persons died and two others were seriously injured. One vehicle was insured by defendant-appellee J.C. Penney Casualty Insurance Company (J.C. Penney). Christopher Bondurant, decedent of plaintiff-appellant Administrator of the Estate of Christopher Bondurant (Bondurant's Estate) was a passenger in the automobile insured by J.C. Penney. That vehicle also contained another passenger as well as a driver.

The other vehicle was owned and operated by Randall Robinson, deceased. The Robinson vehicle had three passengers beside the driver, two of whom were also killed.

J.C. Penney and Robinson's insurance company, West American Insurance Company, paid a total of $400,000 into the Fairfield County Common Pleas Court as the total available under the policy's limits. This amount did not include any uninsured or underinsured motorist coverage, but was liability insurance.

The various claimants reached an agreement with the two insurance companies for distribution of the funds, and the trial court filed the judgment entry on June 9, 1988 that outlined the settlement. Pursuant to the entry, Bondurant's Estate was to receive $35,000. Apparently it is undisputed by the parties that this does not fully compensate the Estate for Christopher Bondurant's death.

Following the distribution of the liability limits, Bondurant's Estate made a claim against J.C. Penney for $265,000 under its $100,000 per person/$300,000 per occurrence uninsured and underinsured motorist limits. J.C. Penney maintained that Bondurant's Estate could not recover from both the liability limits and the underinsured motorist limits of the same policy and same car for the same accident. The trial court granted summary judgment in favor of J.C. Penney, and this appeal ensued.

In Case 35-CA-89, Bondurant's Estate appeals from a judgment of the Probate Court of Fairfield County, Ohio that overruled the motion of the Estate to set aside its judgment approving the settlement *supra,* and the release signed in consideration of that settlement.

In 40-CA-89, 17 year old Thomas Frazier was killed in a different automobile accident than the one discussed above. He was a passenger in a vehicle insured by Progressive Casualty Insurance Company. The liability limits on that policy were also exhausted, and plaintiff-appellant Administrator of the Estate of Thomas J. Frazier (Frazier's Estate) then made a claim against the uninsured/underinsured motorist coverage in a policy owned by decedent's father, and written by defendant-appellee Gulf Insurance Company (Gulf Insurance). The parties reached a settlement agreement and on July 19, 1988, the Probate Court of Pickaway County approved the settlement. Frazier's Estate then executed a release to Gulf Insurance.

Subsequently, Frazier's Estate moved the Probate Court of Pickaway county to set aside the settlement and the release. The Probate Court set aside the settlement but held that it had no jurisdiction to set aside a release. The Estate of Frazier then filed the declaratory judgment action in the Common Pleas Court of Fairfield County.[1]

A

In Case No. 39-CA-89, Bondurant's Estate assigns three errors:

"ASSIGNMENT OF ERROR NO. I.
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT, THEREBY CONCLUDING THAT THERE WAS NO UNDERINSURED MOTORIST COVERAGE FOR APPELLANT'S CLAIM PURSUANT TO R.C. §3937.18 AND CONTROLLING CASE LAW.

"ASSIGNMENT OF ERROR NO. II.
"THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING OR REFUSING TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT ON THE ISSUE OF WHETHER THERE WAS UNDERINSURED MOTORIST COVERAGE FOR APPELLANT'S CLAIM PURSUANT TO R.C. §3937.18 AND CONTROLLING CASE LAW.

"ASSIGNMENT OF ERROR NO. III.
"THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO FIND A QUESTION OF FACT PRECLUDING SUMMARY JUDGMENT FOR APPELLEE."

I & II

The first two assignments of error address the same issue, so we will address them together.

Civ. R. 56(C) states in pertinent part:
"... Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The trial court should not enter a summary judgment if it appears that a material fact is genuinely disputed. Nor should summary judgment be granted if, construing the allegations most favorably toward the nonmovant, reasonable minds could draw different conclusions from the undisputed facts, *Duke v. Sanymetal Products Company. Inc.* (1972), 31 Ohio App.2d 78.

R.C. 3937.18 states in pertinent part:
"...
"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

The trial court gave four reasons why it found that Bondurant's Estate claims untenable:

"1. The driver of the automobile in which decedent was a passenger would have to be both a tortfeasor and an underinsured motorist. The Estate of Bondurant would be both the beneficiary of the J.C. Penney Policy and an adversarial claimant of it.

"2. The combination of a tort claim compensable under the liability portion of a policy with an underinsured claim under that same policy and same car would be "stacking" a recovery of an unusual dimension never accomplished even before anti-stacking language was permitted.

"3. The policy defines the limit of liability is 'most we will regardless of covered persons, claims made... or vehicles involves in the accident.'

"4. The policy language provides that for the purpose of determining underinsured coverage, a vehicle owned by the insured is not an uninsured car."

Bondurant's Estate urges as a matter of law that because the settlement amount it actually received from the pooled liability limits of J.C. Penney and West American Insurance Company was insufficient to compensate it for its damages, it is entitled to compensation under the underinsured portion of the policy. The Estate cites our case of *Holcomb v. Allstate Insurance Company* (March 24, 1988), Richland App., Case No. CA-2535, unreported, as controlling authority.

In *Holcomb,* 5 persons were injured in an accident. The tortfeasor's liability limit was $100,000, of which *Holcomb* ultimately received $54,000. She then made a claim against her mother's auto insurance policy that had underinsured limits of $100,000. Her mother's insurance company asserted that because the limits were identical, it did not have to provide underinsured motorist coverage. We held that Holcomb could recover from the second insurance company, citing *James v. Michigan Mutual Insurance Company* (1985), 18 Ohio St.3d 386 for the proposition that the intent of the statute was to insure that persons injured by an underinsured motorist would not receive less than if they had been injured by an uninsured motorist. We do not see how the Estate here would be in a better position if the tortfeasor had been uninsured, which is the point of *Holcomb* and *James.* We find *Holcomb* distinguishable in the fact that the insured party was not attempting to recover both liability and underinsured coverage under the same policy.

The Estate also argues that each of the statutory wrongful death beneficiaries of Christopher Bondurant are insured under the language of J.C. Penney policy. For this reason, it argues that the per accident limit of $300,000 should apply rather than the $100,000 per person limit. We do not agree. The policy defines the covered persons as the policy owner or any family member, or any other person occupying the covered automobile. Christopher Bondurant is an insured by virtue of that second clause of the definition, but his mother, father and brother are not insured because they were not also occupying the car. For this reason, even if there were underinsured coverage, the per person limit of $100,000 would apply.

In the case of *Hill v. Allstate Insurance Company* (1990), 50 Ohio St.3d 243, the Supreme Court held:

"Unless otherwise provided by an insurer, underinsured motorist liability insurance coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage."

Syllabus by the Court, citations omitted.

Bondurant's Estate attempts to distinguish *Hill* on the basis that *Hill* does not address the issue of multiple claims that result in the injured receiving less than full underinsured limit. The Supreme Court in *Hill* points out, however, that R.C. §3937.18 uses the phrase "the limits of liability *available* for payment to the insured." The statute does not say "the amount actually received by the insured." We note as well that our court decided *Holcomb, supra,* two years prior to the Supreme Court's pronouncement in *Hill, supra.*

Bondurant's Estate maintains that it is simply inaccurate to say that there was $400,000 worth of coverage available for payment to him in this case. However, the statute in that same subparagraph two does utilize the phrase "amounts actually recovered" when it discusses how to determine the limits of liability on the under insured motorist coverage. Because the legislature utilized the two different phrases, we must assume that it meant two different things by those phases.

We also agree with the trial court that there is some anomalous stacking occurring if recovery is permitted under both liability and the underinsured motorist's portion of a single policy. While Bondurant's Estate is correct

when it said that it is not the classic definition of the word stacking, it nevertheless, would have the effect of defeating the limitation of liability language quoted by the trial court, *supra.*

On the authority of *Hill, supra,* we find that the trial court correctly determined that underinsured coverage was not available to the Estate under the J.C. Penney Policy.

The first and second assignments of error are overruled.

### III

In its third assignment of error, Bondurant's Estate urges that there is an issue of fact regarding the comparative negligence of the two drivers of the automobiles involved in the accident.

J.C. Penney asserts that the Estate signed full releases in favor of both drivers involved in the accident, reserving only the right to pursue its underinsured motorist claim against J.C. Penney.

Ohio's Comparative Negligence Statute, R.C. §2315.19, applies in cases where contributory negligence or implied assumption of the risk is asserted and established as an affirmative defense against the complainant or his legal representative. Here, we find no allegations that Christopher Bondurant was negligent. We frankly do not see how the Estate is in any better position if it alleges that the Robinson vehicle was underinsured with regard to Christopher Bondurant, because the insurer of Robinson's vehicle, West American Insurance, had liability limits of $100,000, which it paid into the Common Pleas Court.

We find that upon the posture of this case, there was no material fact in issue. The trial court did not err in granting summary judgment in favor of J.C. Penney.

The third assignment of error is overruled.

### SECTION B.

In cases No. 35-CA-89 and 40-CA-89, Bondurant's Estate and Frazier's Estate assign two errors:

"ASSIGNMENT OF ERROR NO. I.
"THE TRIAL COURTS ERRED AS A MATTER OF LAW IN FAILING TO SET ASIDE THE SETTLEMENT/RELEASES, THEREBY CONCLUDING THAT THERE WAS NO MISTAKE OF FACT OR LAW REGARDING R.C. 2125.02(C).

"ASSIGNMENT OF ERROR NO. II.
"THE TRIAL COURTS ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE PARTIES CORRECTLY UNDERSTOOD THE LAW OF OHIO UNDER TO R.C. 2125.02 AND 3937.18(A) (2) AT THE TIME OF SETTLEMENT, THEREBY CONCLUDING THAT *WOOD V. SHEPHARD* WAS A MODIFICATION OF EXISTING OHIO LAW. *WOOD V. SHEPHARD* WAS A CASE OF FIRST IMPRESSION IN THE OHIO SUPREME COURT INTERPRETING EXISTING STATUTORY LAW AND WAS NOT A MODIFICATION OF EXISTING LAW."

### I & II

Decedent Christopher Bondurant's father owned an automobile insurance policy written by State Farm Insurance. After Bondurant's Estate settled with J.C. Penney for $35,000, *supra,* under their liability provisions, the Estate made a claim through the underinsured portion of State Farm's policy. The policy limits were $50,000 per person/$100,000 per accident. State Farm advised that the amount available was $50,000, and the Estate then settled its claim with State Farm for $50,000 minus the $35,000 received from J.C. Penney. The Probate Court approved this settlement on July 25, 1988.

After Thomas Frazier's Estate settled with the tortfeasor's liability bond for $12,500, the Estate made a claim through the underinsured motorist coverage in a policy owned by Thomas Frazier's father with Gulf Insurance Company. The Gulf Insurance Company policy provided for $50,000 per person/$100,000 per accident. The settlement claims of Frazier's Estate against Gulf Insurance was approved by the Probate Court on July 19, 1988.

Some two weeks later, on August 3, 1988, the Supreme Court announced its decision in *Wood v. Shephard* (1988), 39 Ohio St.3d 86. The *Wood* court held:

"Each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to this single person limit of liability in the underinsured motorist provision."

(R.C. 2125.02 and 3937.18(A) (2), construed and applied) syllabus by the court.

Bondurant's Estate has three claimants, his father, mother and brother. Frazier's Estate

also has three, his father, half-brother and half-sister. The Estates concluded from *Wood* that at the time of the settlement negotiations, the per accident limits of the respective policies were available, not the per person limits actually applied. In practical terms, this meant that an addition $50,000 should have been available to each estate. The Bondurant's Estate case comes before us from the overruling of a motion for relief from judgment; the Frazier's Estate case arises out of a summary judgment in its action for declaratory relief. While the procedural law regarding Civ. R. 60(B) and Civ. R. 56 are applicable here, the primary issue for this court is identical in each case; what is the impact of the *Wood* case on the settlement agreements here.

The Estates urged that at the time they entered into the settlement agreements, all parties were laboring under a mutual mistake of fact as to the amount actually available under the insurance policy. The Estates further urged that there is a mistake of law intertwined with the mistake of fact. The Estates maintain that the parties to these releases and settlements were all mistaken as to how to interpret R.C. §2125.02, Ohio's Wrongful Death Statute, and R.C. §3937.18, the underinsured motorist provisions. The trial courts concluded that there was no mistake either of fact or law presented by these cases. In its entry in the Frazier case, the trial court stated that doubtless many wrongful death claims have been settled in reliance on the law as it was understood and accepted prior to *Wood*. We agree with the trial court.

In any negotiation for settlement, the parties take the risk that there may be a subsequent change of law that will adversely affect their claim. A subsequent change of case law does not constitute grounds for obtaining relief, *Doe v. Trumble County Children Services Board* (1986), 28 Ohio St. 3d 128.

The Estates assert that unlike *Doe*, these cases present the circumstance wherein the law did not change. Instead, the Supreme Court in *Wood* construed what the law with regard to wrongful death claims had always been since the enactment of 2125.02.

The trial court stated:

"This is simply an unusually vivid example of what can happen when principles which lawyers and litigants have in good faith accepted are suddenly announced never to have been good law. In such cases someone must be hurt."

Memorandum filed August 22, 1989, at 3.

As the Supreme Court stated in *Doe*, the rationale is to preserve the stability of final judgments and render them enforceable regardless of subsequent changes in law, *Doe* at 131.

We note with appellee-State Farm that this area of the law is by no means resolved even now. This court as well as trial courts and practicing attorneys await further pronouncement from the Supreme Court regarding the law governing insurance policies.

The trial court did not err in determining that it was a subsequent change of law unanticipated by the parties in good faith at the time the settlements were entered into, and not a mutual mistake either of fact and law permitting the reopening of these settled claims. Both assignments of error are therefore overruled.

For the foregoing reasons, the judgments of the Court of Common Pleas of Fairfield County, and the Probate Court of Fairfield County are each affirmed.

PUTMAN, P.J., and HOFFMAN, J., concur.

---

[1] Thomas Frazier was a resident of Pickaway County and his fatal accident occurred in Pickaway County. However, the insurance contract between his father and Gulf Insurance was entered into in Fairfield County.