STATE FARM MUTUAL INSURANCE COMPANY, Appellee,

v.

MAHIN, Admr., Appellant; Buckeye Union Insurance Company, Appellee.

[Cite as *State Farm Mut. Ins. Co. v. Mahin* (1993), 92 Ohio App.3d 291.]

Court of Appeals of Ohio,
Hamilton County.

No. C–920309.

Decided Nov. 24, 1993.

*Cash, Cash, Eagen & Kessel* and *Robert B. Cash,* for appellee State Farm Mutual Insurance Company.

*Clements, Mahin & Cohen* and *Edward Cohen,* for appellant,

*Law Offices of Kenneth B. Flacks* and *Kenneth B. Flacks,* for appellee Buckeye Union Insurance Company.

MARIANNA BROWN BETTMAN, Judge.

This is an appeal from a declaratory judgment action wherein the court below was asked to determine coverage issues involving several different insurance policies.

The operative facts giving rise to the case are these. On November 22, 1987, Susan L. Awalt ("Awalt") was killed and an acquaintance, Jean Walters, was severely injured when they were struck by an automobile negligently operated by Andrew Clayton. At the time of the accident, Clayton had liability insurance through Ohio Casualty Insurance Company ("Ohio Casualty") which provided coverage in the amounts of $100,000 per person and $300,000 per accident. Clayton also had single-limit liability insurance coverage through Amica Insurance Company ("Amica") in the amount of $300,000 per accident. Awalt had an insurance policy with State Farm Mutual Insurance Company ("State Farm") which provided uninsured and underinsured motorist coverage in the amounts of $250,000 per person and $500,000 per accident. Awalt and Walters were also insured under a $1 million personal umbrella policy with Buckeye Union Insurance Company ("Buckeye") which, if applicable, provided coverage in excess of all underlying policies issued to them or to Clayton. Pursuant to its terms, funds from this policy would be distributed to the insured "only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

Awalt was survived by her parents, Edgar and Barbara Awalt. They are Awalt's only next of kin. John Mahin was appointed administrator of Awalt's estate ("the Administrator"). The Administrator brought a wrongful death action for the benefit of Awalt's parents.

The parties stipulated to the trial court that the estate received $200,000 from Ohio Casualty and $100,000 from Amica to settle the wrongful death case with Clayton,[1] and that Walters received $100,000 from Ohio Casualty and $150,000 from Amica to settle her personal injury claim with Clayton.

The Administrator subsequently submitted a claim to State Farm, in which he alleged that Clayton was an underinsured motorist; that he had received $300,000 in proceeds from the policies of insurance issued to Clayton; that the underinsured motorist provision set forth in the policy of insurance purchased by Awalt from State Farm offered coverage in the amount of $500,000 per accident;

---

1. This case involved the settlement of a wrongful death claim only. No survivorship action was involved. Therefore, we note that the personal representative in this action, not the estate, received payment in the settlement of this action for the benefit of Awalt's next of kin, her parents. The issues in this appeal also involve the claims of Awalt's parents as Awalt's next of kin, not the estate.

and that the Administrator was entitled to another $200,000 for Awalt's heirs. State Farm, on the other hand, disagreed, arguing that the claim arising from Awalt's wrongful death was limited to the underinsured "per person" limit of $250,000. It claimed, therefore, that because the sum of the monies received by the Administrator exceeded the "per person" limitation, Clayton was not an underinsured motorist.

When the parties were unable to resolve the dispute, State Farm filed a complaint for declaratory judgment, requesting the court to determine its rights and obligations under the policy of insurance it had issued to Awalt. The court allowed the Administrator to join Buckeye in the action. After the parties stipulated various facts concerning coverage and amounts paid in settlement, the matter proceeded to trial. On April 1, 1992, the trial court issued an order in favor of State Farm and Buckeye, in which it held that neither company was obligated to make any payment to the Administrator of Awalt's estate or to any of Awalt's heirs pursuant to the insurance policies they had issued to Awalt. The Administrator of Awalt's estate now appeals to this court. In his two assignments of error, the Administrator maintains that the trial court erred (1) in holding that the Administrator failed to comply with the exhaustion provision of its contract with Buckeye, and (2) in holding that the tortfeasor that caused Awalt's death was not an underinsured motorist as contemplated by the policy of insurance issued to Awalt by State Farm. For the reasons that follow, based on the recent decision by the Ohio Supreme Court in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, the judgment of the trial court is reversed.

Because State Farm has the underlying underinsurance coverage and Buckeye the excess umbrella coverage, we will consider the assignments of error in reverse order. In his second assignment of error the Administrator alleges that the trial court erred in holding that the tortfeasor was not an underinsured motorist and that as a result State Farm had no obligation to make payments under its policy with the decedent. We sustain this assignment of error on the authority of *Savoie, supra.*

At the time this declaratory judgment was issued and at the time this case was originally argued before this court, the case of *State Farm Mut. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459, and this court's decision in *Berleman v. State Farm Mut. Ins. Co.* (1992), 76 Ohio App.3d 81, 600 N.E.2d 1145, limited Awalt's heirs to the per-person limit of liability in this case. These holdings, when viewed together with *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, relieved State Farm of any obligation for payments to the Administrator under Awalt's underinsured motorist coverage, and the trial court properly so held at the time. *Rose* and *Hill* have now been expressly overruled by *Savoie*

*v. Grange Mut. Ins. Co., supra.* To the extent that *Berleman* relied on *Rose* it, too, is no longer good law.

Several of the holdings of *Savoie,* which clarifies and streamlines many areas of much litigated uninsured and underinsured motorist coverage, apply to this case, and we shall address each in turn.

In overruling *Rose,* the court in *Savoie* has revived and followed the seminal case of *Wood v. Shephard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, which holds that each person entitled to recover damages pursuant to uninsured or underinsured motorist coverage for wrongful death has a separate claim and such separate claims cannot be made subject to the single-person limit of liability. As stated in the first paragraph of the syllabus of *Savoie,* "[l]iability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one 'each person' policy limit are unenforceable." Accordingly, we first hold that the Administrator's wrongful death claim on behalf of the heirs of Awalt is subject to the $500,000 per accident limit under Awalt's coverage with State Farm. We further hold that the language in State Farm insurance policy endorsement 6890AW limiting coverage for death claims to a single-person limit of liability is unenforceable.[2]

State Farm also makes the argument in this case that even if this court were to conclude that the per-accident limits rather than the per-person limits apply to Awalt's wrongful death claim, it is not obligated to make any payments to the Administrator because there is a threshold requirement that in order to get underinsurance coverage, the injured party's underinsurance limits must exceed the tortfeasor's limits.[3] State Farm cites *Hill v. Allstate Ins. Co., supra,* for the proposition that this threshold requirement must be satisfied before any payments are owed. We reject State Farm's argument. *Hill,* which required this comparison-of-limits test, is expressly overruled by the court in *Savoie.* Instead, the court restores the fundamental concept of underinsured motorist coverage as most policyholders probably understand it, that is, getting additional money from one's own carrier when the tortfeasor's insurance is not enough to compensate

---

2. The offending language in the endorsement reads "under 'each person' is the amount of coverage for all damages including damages for care and loss of services, arising out of and due to bodily injury." In the policy, bodily injury is defined to include death. It is the attempt to limit death claims to single limits that is now prohibited.

3. We note that under the terms of Awalt's policy she has both uninsured motorist coverage and underinsured motorist coverage. What is at issue in this case is underinsurance. In its judgment entry, which we reverse today on the authority of *Savoie,* the trial court held that the tortfeasor was not an uninsured motorist. Because it is clear from *Savoie,* especially from the concurring opinion by Justice Douglas, that uninsured motorist cases are different from underinsured motorist cases, we would like to make this distinction clear. In this case we are dealing with the question of underinsured motorist coverage.

fully and fairly the losses which have occurred. It is supplemental to inadequate liability coverage. The third paragraph of the syllabus of *Savoie* holds that "[a]n underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers."

█ Finally, we also find the fourth paragraph of the syllabus of *Savoie* applicable to the case before us. It holds that "[e]ach person, who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01, has a separate claim subject to a separate per person policy limit." That means that in this case Awalt's parents, who are presumed damaged under the statute, may each recover up to $250,000, the per-person limit of liability under the State Farm policy. However, our analysis does not end here. The third paragraph of the syllabus of *Savoie* tells us that the rights of Awalt's parents to recover from State Farm only arise if the monies available for payment to the Administrator on their behalf from the tortfeasor's liability carriers are inadequate to compensate their losses. We must look at the entire picture of what has occurred in this case to declare the obligations of both State Farm and Buckeye.

The Administrator in this case has already received $300,000 from the tortfeasor's liability coverage. Additionally, State Farm is to be credited with $50,000 not exhausted by any injured party from the total available for payment from the tortfeasor's liability coverage. We hold as a matter of law that State Farm will be obligated to pay the Administrator damages which Awalt's parents prove in the appropriate forum in excess of the $350,000 already received or credited on their behalf, up to a $250,000 limit for each parent. In no event will State Farm be obligated to pay more than $500,000.

We turn now to the Administrator's first assignment of error, which involves Buckeye's excess coverage. The Administrator argues that the trial court erred in finding that Buckeye owed nothing to the Administrator under its excess umbrella policy because he did not comply with the exhaustion clause in the Buckeye policy. Based on our analysis in the first part of the opinion, we note that the exhaustion question need only be reached by the trial court if the damages of Awalt's parents exceed $850,000.[4] Since it is impossible to make any

---

4. The following is a breakdown of coverage available before Buckeye is obligated to pay anything:

   $300,000 available from tortfeasor's liability policy;

   $50,000 available for payment which was not exhausted by the Administrator from tortfeasor's liability policy;

   $500,000 maximum amount State Farm has to pay if damages in excess of $350,000 are proved by Awalt's parents.

determination about Buckeye's obligation to make payments to the Administrator until the actual amount of damages to Awalt's parents has been proven, the case as to Buckeye must be remanded pending the outcome of the determination of the full value of the provable losses of Awalt's parents. We will, however, discuss the exhaustion issue further, in the event that Buckeye's umbrella coverage is needed to fully compensate the Administrator for Awalt's parents' losses and because it is the subject of the Administrator's first assignment of error.

The total amount of insurance available to be paid by the tortfeasor's two insurance policies in this case was $600,000. The Administrator received $300,000 and Jean Walters, the other individual injured in this accident, received $250,000. The record reflects that the wrongful death settlement was approved by the probate court with full knowledge of the settlement to Walters. It found the settlement to be fair and equitable.

It is not clear whether Buckeye is arguing that the Administrator had an obligation to exhaust the entire amount of the tortfeasor's coverage leaving nothing for Walters, or whether the Administrator failed to exhaust the $50,000 unpaid to any claimant from the tortfeasor's policies. If Buckeye is arguing the former, that argument is rejected out of hand. We know of no case which requires one injured party, or in this case, the decedent's heirs, to demand and receive policy limits leaving the other injured party or parties with nothing in order to satisfy the exhaustion clause of an insurance policy. Furthermore, this argument, if it was made, is totally at odds with the philosophy of *Motorists Mut. Ins. Co. v. Andrews* (1992), 65 Ohio St.3d 362, 604 N.E.2d 142. Although *Motorists Mutual* covers a different set of insurance facts, applying the reasoning in that case to this one tells us that exhaustion applies to the total amount of money available for payment to Awalt's heirs which would be the $300,000 received, less the $50,000 not paid to anyone. Additionally, and unique to this case is the fact that the umbrella policy issued by Buckeye covered both the decedent and Jean Walters together. Surely, Buckeye would not expect each to use up all the coverage at the expense of the other to meet its exhaustion clause.

If Buckeye is arguing that the Administrator failed to exhaust the $50,000 remaining from the tortfeasor's coverage, we note that that fact alone will no longer automatically mean the exhaustion clause has not been satisfied. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraphs one through three of the syllabus; see, also, *MacDonald v. Republic–Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456. The trial court cannot simply look at the numbers and determine there was no exhaustion, and that, therefore, Buckeye owes nothing. The trial court is obligated to review all the facts and circumstances of the information exchanged between the Administrator and Buckeye, and determine when and whether Buckeye was advised of the settle-

ment, whether Buckeye's subrogation rights were prejudiced, and whether Buckeye unreasonably refused to consent to settle or otherwise to take steps to protect its interest.

Based on the record before it, it was not possible for the trial court to have determined properly whether the exhaustion clause in the Buckeye policy had been satisfied. Representations of counsel about information regarding the proposed settlement and when it was provided to Buckeye are not properly before this court. Nor do we find that a bare answer by Buckeye to the Administrator's cross-claim admitting that it was provided with "certain information on a voluntary basis" by the Administrator provides the court with sufficient information to determine whether the exhaustion clause has been satisfied.

Therefore, we hold that the trial court did not have sufficient information before it to determine whether the exhaustion clause in the Buckeye policy had been satisfied. However, such issue need only be reached if the provable damages of Awalt's heirs exceed $850,000. We thus remand the case for this purpose. Should the exhaustion issue be reached, we instruct the court on remand to consider carefully the factors which are discussed in paragraphs one through three of the syllabus of *Bogan, supra,* and its text at 36 Ohio St.3d at 27–28, 521 N.E.2d at 452–453, and in paragraphs one through three of the syllabus of *MacDonald, supra,* and its text at 45 Ohio St.3d at 30–32, 543 N.E.2d at 460–461.

The judgment of the trial court is, therefore, reversed, and the cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

KLUSMEIER, P.J., concurs.

SHANNON, J., concurs in judgment only.