OPINION
This is an accelerated calendar case submitted to this court on the parties' briefs.
Appellants, Dorothy Doran, Administratrix of the Estate of Barry Miller, Jr.; Patricia Miller, individually and as Administratrix of the Estate of Barry Miller, Sr.; Rebecca Miller, as parent and natural guardian of Jaclyn Miller, a minor; and Michelle Boerner, as parent and natural guardian of Renee Miller, a minor, appeal the trial court's decision which determined that appellants were not entitled to recover under an underinsured motorist policy issued by appellee, Allstate Insurance Company ("Allstate"), to a non-party, Glemma Schultz. The subject policy carried liability limits of $100,000 per person/ $300,000 per accident, and uninsured/underinsured coverage with limits of $100,000 per person/ $300,000 per accident.
The following facts are relevant to a determination of this appeal. On March 9, 1994, an automobile owned by non-party Ralph Mulvaney and operated by non-party Amy Schultz crossed the center line on North Ridge Road in Perry Township, Ohio and collided with an oncoming vehicle. Barry Miller, Jr., a passenger in the vehicle being driven by Amy Schultz died as a result of the injuries he suffered in the collision. The decedent was survived by his mother, Patricia Miller; his father, Barry Miller, Sr. (since deceased); his aunt, Dorothy Doran; and two minor daughters Jaclyn and Renee Miller.
In September, 1994, Allstate paid appellants $200,000 under its liability policy issued to Glemma Schultz, father of Amy Schultz. The remaining $100,000 available under its policy was held back due to potential claims of other parties injured in the accident. Farmers Insurance Company ("Farmers"), as Ralph Mulvaney's insurance carrier, paid $12,500 to appellants in September 1994, under a "permissive user endorsement" provision of a general policy issued to Ralph Mulvaney. While the policy carried a $100,000 per person/$300,000 per accident limit, the "permissive user endorsement" provision limited recovery to $12,500. Subsequently, in August 1995, Farmers paid appellants an additional $287,500 under its uninsured/underinsured provision of its policy which carried a maximum limit of $300,000 per accident.
In August 1997, appellants, Patricia Miller and Jaclyn Miller, received a total of $90,000 pursuant to an underinsured motorist claim brought against a separate Allstate policy issued to Barry Miller, Sr. and Patricia Miller, as insureds.
Appellants then initiated a claim under the underinsured coverage in the policy issued to Glemma Schultz by Allstate. That claim is at the center of this appeal. The policy in question defines "insured persons" for purposes of uninsured/underinsured coverage as:
"1. you and any resident relative.
 "2. any person while operating an insured auto with your
permission.
 "3. any other person who is legally entitled to recover because of bodily injury to you, a resident relative, or a person operating your insured auto with your permission.
It is clear that, under the foregoing definition, appellants are not "insured persons" under the Allstate policy. The policy further provides, however, that the following are "additional insured persons":
 "1. any other person occupying, but not operating, an insured auto.
 "2. any other person who is legally entitled to recover because of bodily injury to a person occupying, but not operating, an insured auto.
Under this language, appellants qualify as "additional insureds." The policy distinguishes between "insured" and "additional insured" persons as it states:
 "An additional insured person shall be insured only to the extent that the limits of liability for Coverage SS under this policy exceed the limits of liability for similar coverage under any other policy."
The policy also provides:
 "Any amount payable to or for an insured person or additional insured person under this coverage will be reduced by all amounts paid by the owner or operator of the uninsured auto or anyone else legally responsible. This includes all sums paid under the bodily injury liability coverage of this or any other auto policy."
On June 10, 1997, appellants filed a complaint for declaratory judgment in the Lake County Court of Common Pleas. Appellants sought a judgment declaring them eligible to recover under the uninsured/underinsured motorist coverage in the policy issued to Glemma Schultz. On April 23, 1998, the trial court entered judgment in favor of Allstate based upon its conclusion that Senate Bill 20 and the corresponding revisions to R.C. 3937.18, effective October 20, 1994, were applicable to this case rather than Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. The General Assembly amended R.C. 3937.18 with the stated purpose of:
 "supersed[ing] the effect of the holding of the Ohio Supreme Court in the October 1, 1993 decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, relative to the application of underinsured motorist coverage in those situations involving accidents where the tortfeasor's bodily injury liability limits are greater than or equal to the limits of the underinsured motorist coverage." Section 7, Am.Sub. S.B. No. 20, 145 Ohio Laws, Part I, 204, 238.
Appellants timely filed a notice of appeal and have presented a single assignment of error. Appellants claim that the trial court erred in granting declaratory judgment in favor of Allstate. For the reasons that follow, we agree.
Subsequent to the trial court's decision, the Supreme Court of Ohio had the opportunity to address the issue of which law is applicable in this sea of shifting sands. In Ross v. Farmers Ins.Group of Cos. (1998), 82 Ohio St.3d 281, the court held:
 "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at syllabus.
Accordingly, in the case sub judice, it was error for the trial court to apply Senate Bill 20 and the amended version of R.C.3937.18 because that became effective on October 20, 1994, while the insurance contract would had to have been entered into prior to that date as the accident itself occurred in March, 1994. Thus, the prior version of R.C. 3937.18, as interpreted by the Supreme Court of Ohio in Savoie, is the applicable statute that should have been used by the trial court in determining this declaratory judgment action.
Allstate asserts, however, that even if the trial court applied the wrong version of R.C. 3937.18, the outcome does not change based upon the clear language contained in the policy. We disagree. While Allstate correctly points out that the precise language in the policy prohibits the stacking of coverages and, additionally, makes them a secondary and excess carrier to Farmers in this situation, these are precisely the type of limitations that were judicially eliminated by the Supreme Court of Ohio inSavoie. While Savoie is no longer the law in Ohio, it is still applicable to this case and we are bound by that decision.
In Savoie, the Supreme Court of Ohio held, in pertinent part:
 "An underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. (Hill v. Allstate Ins. Co.) [1990], 50 Ohio St.3d 243, 553 N.E.2d 658, overruled.)" Id. at paragraph three of the syllabus.
The Savoie court also held that:
 "* * * underinsured motorists who suffer from injuries caused by an automobile accident are entitled to collect up to the full limits of their underinsurance policy to the extent that their damages exceed the amounts which the tortfeasor's insurer has already paid to them." Id. at 508.
Thus, under Savoie, limitations on the stacking of coverages were expressly prohibited. As applied to the case at bar, the damages that appellants suffered exceeded the limits of all other available insurance policies. Therefore, the underinsured portion of Allstate's policy issued to Glemma Schultz was accessible to appellants to fully compensate them for their losses. The policy provisions that Allstate relies upon in its argument violate R.C.3937.18 as interpreted by the Savoie court and, therefore, are invalid.
Additionally, Allstate argues that it makes a significant difference that the deceased was an "additional insured" rather than an "insured" under the terms of its policy. We disagree. While classified as an "additional insured" under the Allstate policy, the deceased was nonetheless insured under the policy as evidenced by the payout to appellants under the liability portion of the policy. Thus, for purposes of applying the Savoie analysis to this case, the distinction between an "additional insured" and an "insured" is one without a difference. Appellants are entitled to collect under the underinsured portion of the policy issued to Glemma Schultz by Allstate.
Allstate also relies on this court's earlier decision inHancock v. Motorists Ins. (Mar. 24, 1995), Trumbull App. No. 93-T-4915, unreported. In Hancock, this court addressed the issue of whether an "excess coverage" provision in one policy was controlling over an "escape" clause in another policy. We concluded that it was and, therefore, the policy which provided "excess coverage" was secondary while the policy that included an "escape" clause was primary. Id. at 10; see, also, Dietrich v.Nationwide Mut. Ins. Co. (Nov. 15, 1995), Hamilton App. NO. C-950042, unreported; Fortman v. Nationwide Mut. Ins. Co. (June 27, 1996), Putnam App. No. 12-95-13, unreported.
Upon further review, we now must conclude that Hancock
conflicts with Savoie and must be overruled. In Hancock, the uninsured/underinsured coverage of the policy at issue contained the same three provisions as the policy in Savoie. In fact, the wording of the Hancock provisions was identical to the wording of the Savoie provisions. Thus, although the primary issue before us in Hancock concerned whether an excess provision is generally controlling over the "pro rata" provision in a second policy, we should have held that the specific excess provision in that case was not enforceable because it was contained in the uninsured/underinsured coverage of the policy in question.
Even though the wording of the excess provision in the instant action is somewhat different than the wording of the provision in both Savoie and Hancock, the effect of the instant provision is the same; i.e., the provision in appellee's policy does not permit an insured to recover the entire amount of the liability limits in two or more applicable policies. Thus, appellants' sole assignment of error is sustained.
Based upon the foregoing analysis, the judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.
FORD, P.J., CHRISTLEY, J., concur.