DECISION AND JUDGMENT ENTRY
This is an appeal from a Vinton County Common Pleas Court summary judgment entered in favor of State Farm Mutual Automobile Insurance Company (State Farm) and Ohio Farmers Insurance Company (Farmers),[1]
defendants below and appellees herein.
Chad A. Post, Ricky E. Post, and Judy E. Post, plaintiffs below and appellants herein, raise the following assignment of error:
 "THE TRIAL COURT ERRED IN FINDING THAT OHIO LAW ALLOWS INSURERS TO LIMIT UNDERINSURED MOTORIST COVERAGE TO THE SINGLE PER PERSON LIMIT WHEN ONLY ONE PERSON HAS SUFFERED BODILY INJURY."
The facts in the case at bar are relatively undisputed. On October 9, 1996, Chad was a passenger in Lloyd Tatman's vehicle. Jarrod Harber's vehicle hit Tatman's vehicle, causing Chad to sustain injuries. Harber allegedly proximately caused the accident.[2]
On April 5, 1999, appellants filed a complaint against Tatman and the appellees. Appellants included claims for negligence, for loss of consortium on behalf of Chad's parents, Ricky and Judy, and for underinsured motorists benefits under the Farmers and the State Farm policies. Appellants, State Farm, and Farmers subsequently filed motions for summary judgment requesting the trial court to determine the insurance companies' respective liabilities.
The following facts relating to the parties' insurance policies are undisputed: (1) Dairyland Insurance Company insured Harber under a liability bond in the amount of $12,500; (2) Tatman was a named insured under the Farmers's automobile insurance policy and Chad fell within the definition of an insured under Tatman's policy; (3) Tatman's insurance policy with Farmers provided uninsured/underinsured motorists coverage in the amount of $25,000 per person and $50,000 per accident; (4) State Farm insured Chad under an automobile insurance policy issued to his father, Ricky; (5) Ricky's insurance policy with State Farm provided uninsured/underinsured motorists coverage in the amount of $50,000 per person and $100,000 per accident; and (6) Ricky, Judy and Chad fall within the definition of an "insured" under the insurance policies.
State Farm advanced appellants the $12,500 that could be available under Harber's insurance. Farmers set off the $12,500 that State Farm advanced as coverage available under Harber's insurance and paid appellants $12,500 under its underinsured motorists coverage (the $25,000 per person limit less the $12,500 available to appellants under Harber's insurance). State Farm has not paid any amounts to appellants under appellants' automobile liability policy, but represents that $25,000 remains available to appellants (the $50,000 per person limit, less the $12,500 Farmers paid, less the $12,500 State Farm advanced on behalf of Harber's insurer).
In their motion for summary judgment, appellants raised three issues. First, appellants argued that each parent's loss of consortium claim was subject to the per person limits contained in the State Farm and the Farmers insurance policies. According to appellants, each of their loss of consortium claims individually carries a separate per person limit under each policy, and therefore, Ricky and Judy individually could recover up to $25,000 under the Farmers policy and up to $50,000 under the State Farm policy, minus any set off.
Second, appellants argued that the amount State Farm and Farmers may set off against their underinsured motorist coverage provisions is the amount that each appellant individually received under the respective policies. According to appellants, the amount of set off is limited to the amount that each insured individually receives for his or her loss. Appellants asserted that the Ohio Revised Code does not permit insurance companies to set off amounts that may be available for payment under another insurance policy, i.e., the other applicable policy limits. Rather, appellants asserted, the Ohio Revised Code only permits insurance companies to set off amounts that an insurer actually has paid individually to each insured under an insurance policy.
Third, appellants argued that R.C. 3937.18 is unconstitutional.
In its motion for summary judgment, Farmers argued that the parents' loss of consortium claims are collectively subject to the per person limit specified in its policy. Farmers asserted that its policy specifically limits all claims arising out of a single individual's bodily injury to the per person limit. Moreover, Farmers argued, Ohio law permits insurance companies to limit all claims arising out of any one individual's bodily injury to the per person limit. Farmers noted that R.C. 3937.18(H) specifically permits insurance companies to limit all claims arising out of a single individual's bodily injury to the per person limit. Farmers further argued that Ohio law permits it to set off the amount available for payment, as opposed to the amount an insured actually recovered, under another automobile insurance policy.
In its motion for summary judgment, State Farm argued that: (1) each parent's loss of consortium claims is not individually subject to the per person limit set forth in the State Farm policy; (2) it is entitled to set off against its per person coverage limits the amounts available for payment under Harber's and Tatman's policies; and (3) the per person limit set forth in the State Farm policy defines its underinsured motorist coverage liability limit for the parents' loss of consortium claims and for Chad's bodily injury claim.
On February 9, 2000, the trial court granted appellees' motions for summary judgment. The trial court determined that the parents' loss of consortium claims were not subject to a separate per person limit. Rather, the trial court determined that appellees' insurance policies validly limited the loss of consortium claims to the per person limit. The court further found that appellees are entitled to set off the amounts available for payment under other insurance policies. Thus, the trial court determined that Farmers is entitled to set off the $12,500 that is available for payment under Harber's insurance policy, and that State Farm is entitled to set off the $12,500 available for payment under Harber's policy and the $12,500 available for payment under the Farmers' policy. Appellants filed a timely notice of appeal.
In their sole assignment of error, appellants argue that the trial court erred by granting appellees summary judgment. Specifically, appellants assert that the trial court incorrectly found that Ohio law permits insurers to limit underinsured motorist ("UIM") coverage to the single per person limit when only one person has suffered bodily injury. Within their assignment of error, appellants raise three issues: (1) whether the parents' loss of consortium claims are individually subject to the per person limit of the UIM coverage; (2) whether Ohio law permits insurance companies to set off, under UIM policy provisions, the amounts available for payment under another insurance policy, as opposed to the amounts actually received by each insured under other applicable insurance policies; and (3) whether S.B. 20 denies consortium claimants constitutional rights. We will address each issue in turn.
 A. SUMMARY JUDGMENT STANDARD
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g.,Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241,245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
 B. INTERPRETATION AND CONSTRUCTION OF UNINSURED/UNDERINSURED MOTORIST COVERAGE PROVISIONS
The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g., Nationwide Mut. Fire Ins. Co. v. Guman Bros.Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686; Alexander v.Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. When interpreting an automobile liability insurance policy, courts must employ the statutory law in effect at the time of contracting or renewal. Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, 287-88, 695 N.E.2d 732, 737.
In interpreting an automobile liability insurance policy, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604,607, 710 N.E.2d 677, 679. Provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. Ross,82 Ohio St.3d at 287, 695 N.E.2d at 736.
A clear, unambiguous underinsured motorist coverage provision is valid and enforceable as long as the provision is not "contrary to the coverage mandated by R.C. 3937.18(A)." Moore v. State Auto. Mut. Ins. Co. (2000),88 Ohio St.3d 27, 28-29, 723 N.E.2d 97, 99; see, also, Schaefer v.Allstate Ins. Co. (1996), 76 Ohio St.3d 553, 555, 668 N.E.2d 913, 915
(stating that a court should not deem an insurance policy provision unenforceable unless the provision is contrary to the statute and contrary to the statute's purpose).
When construing an underinsured motorist coverage provision in an automobile liability insurance policy, a court should remain "mindful of the basic tenet that the purpose of [underinsured] motorist coverage and its mandatory offering is `to protect persons from losses which, because of the tortfeasor's lack of [adequate] liability coverage, would otherwise go uncompensated.'" Id., 76 Ohio St.3d at 555,668 N.E.2d at 915 (quoting Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478,480, 639 N.E.2d 438, 440); see, also, Moore v. State Auto. Mut. Ins. Co.
(2000), 88 Ohio St.3d 27, 31, 723 N.E.2d 97, 102.
With the foregoing principles in mind, we now consider appellants' arguments.
 C. PER PERSON LIMIT
Appellants first argue that the trial court erroneously concluded that each parent's loss of consortium claim was not individually subject to the per person limit. Appellants claim that Ohio law does not permit insurers to consolidate all loss of consortium claims and subject all such claims to the per person limit. Appellants contend that under Ohio law, each parent's loss of consortium claim is a separate and distinct claim entitled to separate per person limits under State Farm's and Farmers's insurance policies.
In support of their argument, appellants cite Schaefer v. AllstateIns. Co. (1996), 76 Ohio St.3d 553, 668 N.E.2d 913, and Savoie v. GrangeMut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Appellants note that in Schaefer, the Ohio Supreme Court declared that each person covered by an automobile insurance policy who asserts a loss of consortium claim has a separate claim that is individually subject to the per person limit contained in the policy. Appellants further note that inSavoie, the Ohio Supreme Court stated that each person covered by an UIM policy has a separate claim subject to a separate per person policy limit.
While appellees essentially agree with appellants' summation of theSchaefer and Savoie holdings, appellees argue that the October 20, 1994 enactment of S.B. 20 effectively overruled Schaefer and Savoie and that insurers now may limit all derivative claims, including consortium claims, arising out of one individual's bodily injury to the per person liability limit. Appellees note that R.C. 3937.18(H), enacted as part of S.B. 20, authorizes insurers to limit all derivative claims arising out of one individual's bodily injury to the per person limit. Appellees thus assert that because their policies specifically limit all claims arising out of any one individual's bodily injury to the per person limit, and because R.C. 3937.18(H) permits insurers to consolidate all claims arising out of any one individual's bodily injury and to subject all such claims to the per person limit, appellants' loss of consortium claims are subject to the per person limits specified in the policies.
We initially note that the parties do not dispute that the insurance contracts were entered into after the October 20, 1994 enactment of S.B. 20. The parties dispute, however, whether the enactment of S.B. 20 superseded the Ohio Supreme Court's ruling in Schaefer and Savoie.
In Savoie, the Ohio Supreme Court held that automobile liability insurance policy provisions which attempted to consolidate all wrongful death damages into one per person limit are unenforceable. Id., paragraph one of the syllabus. In Schaefer, the court held that automobile liability policy provisions which attempted to consolidate all loss of consortium claims into one per person limit are unenforceable. Id.,76 Ohio St.3d at 558, 668 N.E.2d at 917.
In Savoie, Christina L. Savoie died while a passenger in tortfeasor Gary F. Miller's vehicle. Grange Mutual Casualty Company insured the tortfeasor's vehicle. The limits for liability under the Grange policy were $100,000 per person and $300,000 per accident.
Two uninsured/underinsured motorist policies also were in effect from Motorists Mutual Insurance Company. Each policy provided coverage in the amount of $100,000 per person and $300,000 per accident. Christina's father and mother were insureds under the first of the Motorists policies. Christina's father, mother, sister and Christina were insureds under the second of the Motorists policies. Christina's family filed a wrongful death action against the tortfeasor and sought underinsured motorist coverage from Motorists.
On appeal, the Ohio Supreme Court determined that each member of Christina's family was entitled to collect underinsured motorist benefits as a result of Christina's wrongful death up to the $100,000 per person limit. The court stated: "[l]iability policy provisions which purport to consolidate wrongful death damages suffered by individuals into one `each person' policy limit are unenforceable." Id. at paragraph one of the syllabus.[3]
In Schaefer, the Schaefers suffered injuries in an accident that an uninsured motorist proximately caused. The Schaefers were insured through Allstate Insurance Company and carried uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. The Schaefers submitted claims to Allstate for uninsured motorists coverage. Mr. Schaefer sought compensation for loss of consortium and Mrs. Schaefer sought compensation for her bodily injuries. A jury awarded the Schaefers $100,000 each. Allstate subsequently argued that the Schaefers' claims should be consolidated and collectively subjected to the $100,000 per person limit.
The Ohio Supreme Court determined that each claimant individually should be entitled to collect up to the per person limit. The Schaefer
court extended "the logic of the decision in Savoie * * * to loss of consortium claims in personal injury cases." Id., 76 Ohio St.3d at 557,668 N.E.2d at 916. The Schaefer court reasoned that there was "no valid reason to distinguish between wrongful death claims and loss of consortium claims in person injury cases." Id., 76 Ohio St.3d at 557-58,668 N.E.2d at 917. Thus, the Schaefer court concluded:
 "[E]ach person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person limit. A provision in an insurance policy which reaches a contrary result is unenforceable."
Id., 76 Ohio St.3d at 558, 668 N.E.2d at 917.
Were Schaefer and Savoie the controlling law applicable to the case at bar, we would no doubt agree with appellants that the insurance policies may not collectively limit the parents' loss of consortium claims to the single per person limit. The enactment of S.B. 20, however, effectively overruled both Savoie and Schaefer. See, e.g, Plott v. Colonial Ins. Co.
(1998), 126 Ohio App.3d 416, 710 N.E.2d 740; Justice v. State Farm Ins.Co. (Oct. 18, 2000), Licking App. No. 2000 CA 29, unreported; Greiner v.Timm (Mar. 28, 2000), Franklin App. No. 99AP-618, unreported, appeal disallowed (2000), 89 Ohio St.3d 1466, 732 N.E.2d 998; Maric v. Adams
(Mar. 31, 2000), Lake App. No. 98-L-142, unreported, conflict certified (2000), 89 Ohio St.3d 1488, ___ N.E.2d ____;[4] Francis v. McClandish
(Apr. 19, 1999), Athens App. No. 98 CA 21, unreported; Smock v. Hall
(1999), 132 Ohio App.3d 478, 725 N.E.2d 673, discretionary appeal allowed, 86 Ohio St.3d 1406, 711 N.E.2d 233, appeal dismissed (2000),87 Ohio St.3d 1250, 722 N.E.2d 521.
R.C. 3937.18(A)(2), as amended by S.B. 20,[5] requires an automobile liability insurance policy to offer:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection c for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
R.C. 3937.18(H) provides that any automobile liability insurance policy that includes underinsured motorist coverage may limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. Specifically, the statute provides:
 Any automobile liability * * * policy of insurance that includes [underinsured motorist coverage] * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
R.C. 3937.44 similarly permits automobile liability insurers to limit all claims arising out of any single individual's bodily injury to the per person limit set forth in the insurance policy. The statute provides:
 Any * * * automobile liability or motor vehicle [insurance policy] that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.
The clear import of the foregoing provisions, as applied to underinsured motorist coverage, is to permit automobile insurers to limit all claims, including consortium claims, arising out of any single individual's bodily injury to the per person limit shown in the insurance policy. The statutes could not be clearer. See Maric, supra (noting that R.C. 3937.18(H) "specifically authorize[s] insurers to limit multiple derivative claims, such as claims for loss of consortium, to a single per-person coverage limit").
Other appellate courts have recognized that R.C. 3937.18 permits insurers to consolidate all claims arising out of any single individual's bodily injury to the per person limit and that Schaefer and Savoie no longer represent the current state of the law relating to consolidating derivative claims, such as loss of consortium claims and wrongful death claims. See, e.g, Plott, supra; Francis, supra; Smock, supra.
In Smock, for example, the appellants, the deceased's children and his wife, collected $100,000 from the tortfeasor's insurer. The appellants sought underinsured motorist coverage from their own insurer. The appellants carried underinsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence. The appellants' insurance policy contained the following language:
 "The limit of liability shown in the Declarations for `each person' for Bodily Injury Liability is our maximum limit of liability for damages * * * for death, arising out of bodily injury sustained by any one person in any one accident. * * * This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
* * * *."
The appellants' insurer argued that because appellants' per person underinsurance coverage limit was the same as the tortfeasor's liability limit, the appellants were not "underinsured." The appellants argued thatSchaefer applied. The appellate court disagreed, however, stating: "R.C.3937.18(H) explicitly authorizes insurers to limit multiple derivative claims that arise out of the injuries of a single insured, to a single per-person coverage limit."
In Francis v. McClandish, the appellants, citing Schaefer, argued that the loss of consortium claims were not subject to the per person limits contained in their underinsured motorist coverage. The appellants argued that the loss of consortium claims are separate and distinct claims that each are entitled to their own separate per person limits.
This court disagreed with the appellants. We stated that R.C. 3937.44
expressly permits automobile liability insurers to consolidate all claims arising out of one individual's bodily injury, including consortium claims, to the per person limit. We disagreed that Schaefer represented the current state of the law. We noted that R.C. 3937.44, enacted as part of S.B. 20, "expressly declared policy provisions that treat all claims arising out of one person's bodily injury as a single claims to be enforceable." We stated:
 "Thus, by enacting S.B. 20, the Ohio General Assembly replaced Savoie as the law of this state as of October 20, 1994. This legislative superseding of Savoie also has an impact on the viability of Schaefer, considering that Schaefer represented an extension of Savoie's holding to loss of consortium claims."
Having concluded that Ohio law permits automobile liability insurers to limit all claims arising out of one individual's bodily injury to the per person limit, we next considered whether the insurance policy clearly and unambiguously so limited all such claims. We concluded that "the policy validly limited loss of consortium claims to the single per person policy limit." The policy expressly stated that the "each person" limitation applied to all claims "arising out of bodily injury to one person."
The court in Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported, discretionary appeal not allowed (2000), 89 Ohio St.3d 1427,729 N.E.2d 1197, also recognized that S.B. 20 permits insurers to limit consortium claims to the per person limit:
 "R.C. 3937.18(H) * * * specifically permits an insurance company to `include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident.' Waite v. Progressive Ins. (1998), 128 Ohio App.3d 344, 714 N.E.2d 981"
Appellants argue, however, that R.C. 3937.18(H) violates public policy. We disagree with appellants. The Ohio Supreme Court has not stated that consolidating all derivative claims and subjecting all derivative claims to the per person limit violates public policy. The Ohio General Assembly clearly has stated that derivative claims may be consolidated. Because the Ohio Supreme Court has not found that such a consolidation violates public policy, and because the General Assembly explicitly has stated that such consolidation is permissible, we decline appellant's invitation to find that R.C. 3937.18(H) violates public policy.
Thus, having determined that Ohio law permits automobile liability insurers to limit all claims arising out of one individual's bodily injury to a per person limit, we now must examine whether the language contained in the Farmers and State Farm policies clearly and unambiguously limit all claims arising out of one individual's bodily injury to the per person limit. If so, the provisions are valid and enforceable.
Farmers's "Limit of Liability" provision provides as follows:
 "If the declarations indicates an `each person' and `each accident' limit of liability for Uninsured/Underinsured Motorists Coverage, the limit of liability shown in the Declarations for `each person' is our maximum limit of liability for all damages including damages for care, loss of services or death arising out of bodily injury sustained by any one person in any one accident for either Uninsured Motorists Coverage of Underinsured Motorists Coverage."
State Farm's limit of liability provision provides as follows:
 "The amount of coverage is shown on the declarations page under `Limits of Liability-U-Each Person, Each Accident." Under `Each Person' is the amount of coverage for all damages arising out of and due to bodily injury to one person. `Bodily injury to one person' includes all injury and damages to others arising out of and resulting from this bodily injury. Under `Each Accident' is the total amount of coverage, subject to the amount shown under `Each Person,' for all such damages arising out of and due to bodily injury to two or more persons in the same accident."
We agree with the trial court's conclusion that the plain language of the insurance policies at issue limits each loss of consortium claim to the per person limit. Farmers' insurance policy specifically limits all damages, including damages for loss of care and services, arising out of a single individual's bodily injury to the "each person" liability limit. State Farm's policy likewise expressly states that all damages arising out of a single individual's bodily injury is subject to the "each person" liability limit. Chad's parents' loss of consortium claims arise out of Chad's bodily injury. See Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98 CA 21, unreported (stating that a "loss of consortium claim is necessarily one `arising out of bodily injury'"). Thus, pursuant to the insurance policies, Chad's parents' loss of consortium claims are limited to the per person limits set forth in each company's policy.
We again note that we disagree with appellants' argument that Schaefer
and Savoie represent the current state of the law with respect to loss of consortium claims in the underinsured motorist context. Pursuant to the amendments enacted under S.B. 20, an automobile insurer may limit all damages arising out of a single individual's bodily injury to the per person limit shown in the policy. Thus, we conclude that in the case subjudice the trial court properly determined that the insurance policies validly limited the loss of consortium claims to the per person limits.
Appellants assert, however, that R.C. 3937.18(H) is ambiguous. In support of their argument, appellants cite Moore v. State Auto. Mut.Ins. Co. (2000), 88 Ohio St.3d 27, 723 N.E.2d 97. In Moore, the Ohio Supreme Court held:
 "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer."
Id., syllabus. Moore essentially revived Sexton v. State Farm Mut. Ins.Co. (1982), 69 Ohio St.2d 431, 433 N.E.2d 555.[6]
In reaching its decision, the Moore court determined that R.C.3937.18(A)(1), the statute regarding uninsured motorist coverage, is "ambiguous regarding whether an insurer may limit uninsured motorist coverage to accidents in which an insured sustains bodily injury." Id.,88 Ohio St.3d at 31, 723 N.E.2d at 101. Thus, to ascertain the meaning of the statute, the Moore court considered the legislative intent behind the statute.
In examining the legislative intent, the Moore court noted that the uncodified legislative history explicitly stated, with respect to R.C.3937.18(A)(2), that the intent of the General Assembly "in amending R.C.3937.18(A)(2) was to supersede the effect of [the supreme court's] holding in Savoie." Id., 88 Ohio St.3d at 32, 723 N.E.2d at 102. TheMoore court thus concluded that "if the General Assembly had intended the changes in subsection (A)(1) to supersede the court's holding in Sexton, it would have made its intentions equally clear by declaring such in the uncodified portions of the law." Id.
 Moore does not appear to apply to the case at bar. Other appellate districts have found Moore applicable in situations only when the insurer attempts to prohibit a non-bodily injured insured from collecting uninsured/underinsured motorist benefits under the insured's own policy.[7] Compare Wallace v. Balint (June 8, 2000), Cuyahoga App. No. 75953, unreported, and Wright v. Allstate Ins.Co. (Sept. 13, 2000), Lorain App. No. 99 CA 7485, unreported, andRakowski v. Cassel (Feb. 18, 2000), Lucas App. No. L-99-1135, unreported, motion for reconsideration granted and remanded to trial court (Mar. 17, 2000), Lucas App. No. L-99-135, unreported, with Carruth v. Erie Ins. Group (Sept. 21, 2000), Cuyahoga App. No. 77161, unreported,[8] and Campbell v. Allstate Ins. Co. (May 19, 2000), Clark App. No. 99 CA 065, unreported,[9] and Lyles v.Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported. See, also,Plott v. Colonial Ins. Co. (1998), 126 Ohio App.3d 416,710 N.E.2d 740;[10] Greiner, supra.[11]
 Justice v. State Farm Ins. Co. (Oct. 18, 2000), Licking App. No. 2000 CA 29, unreported, involved facts similar to the facts in the case subjudice. The appellants in Justice, similar to appellants in the case at bar, argued that under Moore, an insurer may not consolidate all claims arising out of one person's bodily injury and subject all those claims to the per person limit specified in the policy. The appellants asserted: "Ohio law requires each insured's damages to be computed separately, limited only by the `each accident' limit of liability for the underinsured motorist coverage." The court of appeals disagreed, stating as follows:
 "We do not agree with appellant that permitting an insurer to consolidate all the claims arising out of a single bodily injury or death under a single `per person' limit defeats the underlying purpose of uninsured motorist insurance, which is to protect persons entitled to recover damages from uninsured motorists. Here, State Farm has acknowledged, and paid appellants' claims under the each-person limit. [Unlike Moore t]his is not an issue of whether appellants may recover, but rather in what amount."
(Emphasis added.)
The court thus concluded:
 "We find R.C. 3937.18 mandates provision of uninsured motorists coverage, and, pursuant to Moore, supra, the insurance coverage may not be limited in such a way that the insured must suffer bodily injury in order to be compensated for his or her damages. However, we find Ohio law permits an insurer to consolidate all the claims which arise out of a single [bodily injury] into a single claim under the single limits, if the policy language is clear and unambiguous."
In case at bar, unlike Moore, appellants have not argued that the insurers are attempting to outright deny coverage to the parents for their loss of consortium claims. Rather, the insurers are attempting to limit the liability to the per person limits specified in the policies and as permitted by R.C. 3937.18(H) and 3937.44. Moreover, we note thatMoore recognizes that the legislative intent behind the amendments to R.C. 3937.18(A)(2) was to supersede the court's Savoie holding.
Thus, we conclude that under the Ohio Revised Code's underinsured motorist provisions, automobile liability insurers may consolidate all claims arising out of one individual's bodily injury and may subject all such claims to the per person limit specified in the policy.
 D. AMOUNT AVAILABLE FOR PAYMENT/SET OFF
Appellants next argue that in determining whether an insured is underinsured, the amount available under the tortfeasor's automobile liability policy is not determinative. Rather, appellants assert that in determining whether an insured is underinsured, a court should compare the amount the insured actually received from the tortfeasor's insurer with the amount of the insured's underinsured motorist limits. Appellants contend that Ohio law does not permit a strict policy limit to policy limit comparison.
Citing Motorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362,604 N.E.2d 142, appellants argue that the set off provisions contained in R.C. 3937.18(A)(2) provide for a set off of the "amount actually received" by each claimant under the tortfeasor's policy and not the "amounts available for payment" under the tortfeasor's policy. Thus, in the case at bar for example, in determining the amount Farmers is entitled to set off, appellants seem to argue that we should consider the amount each claimant received[12] and not the amount that collectively would be available to the claimants.
Appellants argue that S.B. 20 did nothing to impair the validity ofAndrews. Appellants contend that the addition in S.B. 20 of the "excess" language in R.C. 3937.18(A)(2) does not require a different interpretation of "amounts available for payment" and that S.B. 20's elimination of the "amounts actually recovered" language does not affect the interpretation.
Appellees assert that R.C. 3937.18(A)(2) permits an automobile liability insurer to set off against its insured's underinsured motorist coverage the amounts available for payment under the tortfeasor's policy and under all other applicable liability policies or bonds. Contrary to appellants' argument, appellees contend that Ohio law does permit a strict policy limit to policy limit comparison.
Former R.C. 3937.18(A)(2) required automobile liability insurers to offer:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, when the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
In 1990, the Ohio Supreme Court interpreted former R.C. 3937.18(A)(2) to provide for a policy limit to policy limit comparison. Hill v.Allstate (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, overruled (1993),67 Ohio St.3d 500, 620 N.E.2d 809 The Hill court stated:
 "Unless otherwise provided by an insurer, underinsured motorist liability coverage is not available to an insured where the limits of liability contained in the insured's policy are identical to the limits of liability set forth in the tortfeasor's liability insurance coverage."
Id., syllabus.
The Hill court rejected the proposition that former R.C. 3937.18(A)(2) required a comparison between the limits of UIM coverage and the portions of the tortfeasor's insurance that actually were available to the individuals claiming UIM benefits. Id., 50 Ohio St.3d at 245,553 N.E.2d at 661. Instead, the court stated that the comparison should be between the limits of the respective polices.
In 1992, the Ohio Supreme Court appeared to question the Hill holding. In Andrews, the court, in interpreting former R.C. 3937.18(A)(2), stated:
 "When determining whether a motorist is underinsured within the meaning of R.C. 3937.18(A)(2), the amount actually available for payment under the tortfeasor's liability insurance policy must be compared with the insured's underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage."
Thus, contrary to the Hill holding, the Andrews court stated that the comparison should be between the amount actually available for payment and the amount of the UIM limits. The Andrews court avoided overrulingHill by noting that Hill involved only a single claimant, whereasAndrews involved multiple claimants. Id., 65 Ohio St.3d at 365-66,620 N.E.2d at 145.
In Andrews, the tortfeasor's policy provided $750,000 in liability coverage. Multiple claimants sought compensation under the tortfeasor's automobile liability policy. Due to the presence of multiple claimants, the plaintiffs each received only $1,000 of the $750,000.
The plaintiffs carried underinsured motorist coverage in the amount of $25,000 per person and $50,000 per accident. Because the tortfeasor's liability limit exceeded the amount of coverage under the plaintiffs' UIM coverage, the insurer denied the plaintiffs claim for UIM benefits. TheAndrews court determined, however, that the plaintiffs could collect underinsured motorist benefits under their policies and rejected a strict limit to limit comparison.
In reaching its decision, the court reviewed the policy underlying underinsured motorist coverage: "to assure that persons injured by an underinsured motorist would receive at least the same amount of total compensation that they would have received if they had been injured by an uninsured motorist." Id., 65 Ohio St.3d at 365, 604 N.E.2d at 144. Considering the underlying policy, the court therefore concluded that former R.C. 3937.18(A)(2) required "a comparison between the amount actually available for payment to the plaintiffs ($1,000) with the plaintiffs' underinsured motorist limits under their own policies." Id.,65 Ohio St.3d at 366, 604 N.E.2d at 145.
In addition to considering the policy behind the underinsured motorist statute, the Andrews court examined the language used in the statute. The court stated that "the clear language of R.C. 3937.18(A)(2) requires a comparison between the amount actually available for payment to an insured and the policy limits of the insured's underinsured motorist coverage." Id., 65 Ohio St.3d at 366, 604 N.E.2d at 145. The court explained:
 "[T]he operative language of R.C. 3937.18(A)(2) states that `underinsured motorist coverage * * * shall provide protection * * * where the limits of coverage available for payment to the insured * * * are less than the limits for the insured's uninsured motorist coverage at the time of the accident. * * * Reading this statute, in conjunction with the public policy behind its adoption, the inescapable conclusion is that, when determining whether a motorist is underinsured, the amount actually available for payment under the tortfeasor's policy must be compared with the insured's underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage. This is the only reading of R.C. 3937.18(A)(2) which can give full effect to the General Assembly's stated intent."
Id., 65 Ohio St.3d at 366-67, 604 N.E.2d at 145-46 (omissions in original).
The Andrews court thus concluded that the Andrewses were entitled to collect underinsured motorist benefits from their insurer. The court noted that the Andrewses contracted with their insurer for underinsured motorist coverage in the amount of $25,000 per person and $50,000 per occurrence. The court stated that to adopt a strict policy limit to policy limit comparison and to therefore conclude that the Andrewses were limited to the $1,000 received under the tortfeasor's policy would result in the Andrewses not receiving what they had contracted for with their insurer.
In Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500,620 N.E.2d 809, the Ohio Supreme Court expressly overruled Hill. TheSavoie court interpreted former R.C. 3937.18(A)(2) to permit a plaintiff to recover his or her own uninsured ("UM") or underinsured limits in addition to the liability limits of the tortfeasor, up to the measure of damages suffered by the plaintiff. The Savoie court stated: "an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability policy." Id., paragraph three of the syllabus.
The court subsequently clarified Savoie by stating that any set off permitted under former R.C. 3937.18(A)(2) should not be against the claimant's UIM limits, but rather against the claimant's damages. SeeCole v. Holland (1996), 76 Ohio St.3d 200, 667 N.E.2d 353. The Cole
court stated:
 "[P]ursuant to former R.C. 3937.18, an underinsurance claim must be paid when the individual covered by an uninsured/underinsured policy suffers damages that exceed those monies available to be paid by the tortfeasor's liability carriers. In determining the amount of underinsurance coverage to be paid in a situation involving an accident governed by former R.C. 3937.18, the underinsurance provider is entitled to set off the amounts actually recovered from the tortfeasor's liability carriers against the insured's total damages, rather than against its policy limits."
Id., 76 Ohio St.3d at 225, 667 N.E.2d at 357. See, also, Schaefer,76 Ohio St.3d at 557 n. 2, 668 N.E.2d at 916 (noting the holding of Savoie
that "an insurer's setoff applies against the insured's damages, not against the policy limit of uninsurance/underinsurance coverage") (citingCole).With the enactment of S.B. 20, however, the validity of Andrews,Savoie, and Cole is called into question. Effective October 20, 1994, R.C. 3937.18(A)(2) was amended to provide as follows:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
Most appellate courts have recognized that S.B. 20 effectively overruled the Andrews, Savoie, and Cole decisions which held that former R.C. 3937.18(A)(2) required a comparison between the amount the insured actually received under the tortfeasor's policy and the amount of the insured's damages. See, e.g., Smock v. Hall (1999), 132 Ohio App.3d 478,725 N.E.2d 673, discretionary appeal allowed, 86 Ohio St.3d 1406,711 N.E.2d 233, appeal dismissed (2000), 87 Ohio St.3d 1250, 722 N.E.2d 521
(stating that legislative changes to R.C. 3937.18(A)(2) "defeated any viability that the Andrews reasoning may still have had"); Carruth v.Erie Ins. Group (Sept. 21, 2000), Cuyahoga App. No. 77161, unreported;Pearson v. Motorists Ins. Cos. (Sept. 1, 2000), Ashtabula App. No. 99-A-0009, unreported (expressing the view that the Andrews holding is no longer valid); Maric v. Adams (Mar. 31, 2000), Lake App. No. 98-L-142, unreported (stating that after S.B. 20, Andrews is no longer controlling); Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported, discretionary appeal disallowed, (2000), 89 Ohio St.3d 1427,729 N.E.2d 1197; Littrell v. Wigglesworth (Mar. 13, 2000), Butler App. Nos. CA99-05-092 and CA99-08-141, unreported; Powers v. Nationwide Mut.Fire Ins. Co. (Dec. 6, 1999), Mahoning App. No. 97 CA 219, unreported, vacated and remanded for consideration if applicable of Wolfe v. Wolfe
(2000), 88 Ohio St.3d 246, 725 N.E.2d 261, and Moore v. State Auto. Mut.Ins. Co. (2000), 88 Ohio St.3d 27, 723 N.E.2d 97, (2000),88 Ohio St.3d 509, 727 N.E.2d 1289 ("The legislative history of S.B. 20 leaves no doubt that the Savoie interpretation of R.C. 3937.18 was contrary to the legislative intent when originally enacted and that the purpose of S.B. 20 was to return the status of the law to what it was pre-Savoie."); Vinnece v. Motorists Ins. Co. (Sept. 18, 1998), Montgomery App. No. 16997, unreported.
The Ohio Supreme Court has noted that with the enactment of S.B. 20, "the General Assembly was crystal clear in stating its desire to supersede Savoie." Cole, 76 Ohio St.3d at 225, 667 N.E.2d at 356. TheCole court stated that the Ohio General Assembly, through the enactment of S.B. 20, "intended to explicitly supersede various holdings ofSavoie." Cole, 76 Ohio St.3d at 224, 667 N.E.2d at 356. In recognizing the General Assembly's intent, the Cole court referred to Section 8 of S.B. 20, which provides as follows:
 "It is the intent of the General Assembly in amending division (A)(2) of section 3937.18 of the Revised Code to declare and confirm that the purpose and intent of the 114th General Assembly in enacting division (A)(2) of section 3937.18 * * * was, and the intent of the General Assembly in amending section 3937.18 of the Revised Code in this act is, to provide an offset against the limits of the underinsured motorist coverage of those amounts available for payment from the tortfeasor's bodily injury liability coverage."
In Littrell,[13] the court rejected the argument that Andrews
represented the current state of the law. Instead, the Littrell court concluded that S.B. 20 effectively superseded the Andrews rationale.
In Littrell, the defendant hit the plaintiffs' vehicle. All of the plaintiffs shared familial ties. State Farm insured the defendant's vehicle with liability coverage in the amount of $100,000 per person and $300,000 per occurrence and carried a $1 million umbrella policy.
Colonial Penn Insurance Company insured the plaintiffs' vehicle with UIM coverage of $100,000 per person and $300,000 per accident. One of the plaintiffs carried separate UIM coverage with Westfield Insurance Company in the amount of $500,000 per accident. All five occupants of the plaintiffs' minivan were considered "insureds" under the Colonial Penn and Westfield policies.
The plaintiffs filed a complaint against Colonial Penn and Westfield seeking UIM benefits on behalf of the injured parties and on behalf of the wrongful death beneficiaries of the deceaseds. The complaint also sought UIM proceeds for: (1) one of the deceased's brothers who carried UIM coverage in the amount of $100,000 per person and $300,000 per accident with Preferred Risk Group/Preferred Risk Mutual Insurance Company; and (2) one of the deceased's grandsons who carried UIM coverage of $25,000 per person and $50,000 per accident with Allstate Insurance Company.
Colonial Penn and Westfield filed motions for summary judgment. The insurers argued that neither owed UIM benefits to the plaintiffs because the defendant's liability coverage exceeded the Colonial Penn UIM limits and the Westfield UIM limits. The trial court granted Colonial Penn's and Westfield's motions. The trial court found that under the S.B. 20 version of R.C. 3937.18(A)(2), the statute permits a policy limit to policy limit comparison when determining whether UIM proceeds may be had.
On appeal, the plaintiffs argued that in determining whether they were entitled to UIM coverage under the Colonial Penn and Westfield policies, the trial court should have compared the UIM limits against the amount each individual plaintiff received from the defendant's insurer as opposed to comparing the total liability limit ($1.3 million) of the defendant's policy with the UIM limits under the plaintiffs' insurers.
The appellate court first examined the language of each policy. Each UIM insurance policy contained a provision that a vehicle is "`underinsured' when the liability coverage insuring that vehicle is less than the relevant UIM policy limit." Each UIM policy also stated that "any UIM coverage is available only when the tortfeasor's liability coverage is less than the UIM policy limit."
The court next looked to the language used in the statute. In examining the statute, the Littrell court interpreted the S.B. 20 version of R.C.3937.18(A)(2) to permit insurers to set off "`those amounts available for payment,' not necessarily `actually recovered,' under the tortfeasor's policy." The court noted that former R.C. 3937.18(A)(2) contained the "amount actually recovered" language, but that S.B. 20 removed the "amount actually recovered" language and used "amounts available for payment."
After comparing the two versions of the statute, the court determined that the Ohio General Assembly, by removing the "amount actually recovered" language, must have intended to provide for a set off against the amounts available and not the amounts actually recovered. TheLittrell court explained:
 "Had the General Assembly intended that offsets were to be according to those amounts the insured receives, in hand, from the tortfeasor's liability coverage, there would have been no need to change the language of this final sentence. Instead, the General Assembly rewrote the sentence, and the intent of the General Assembly is clear-offsets must now be done through a policy limit to policy limit comparison, superseding the holding of Andrews."
The court thus concluded that "where the tortfeasor's liability coverage is equal to or greater than the insureds' UIM policy limit, the insureds may not recover under their UIM policy."
Contrary to the Littrell court's decision, a few Ohio appellate courts have concluded that S.B. 20 did not necessarily impair the validity of the Andrews decision. See Smith v. State Farm Ins. Cos. (Oct. 26, 2000), Franklin App. No. 99AP-1131, unreported; Estate of Fox v. Auto-OwnersIns. (June 12, 1998), Darke App. No. 1456, unreported, discretionary appeal denied 86 Ohio St.3d 1492, 716 N.E.2d 723. In Smith and Fox, the courts did not believe that the General Assembly, in amending R.C.3937.18(A)(2), necessarily intended to provide for a set off of the "amounts available for payment" as opposed to the "amount actually recovered."
In Fox, Fox was killed in an automobile accident while a passenger in the vehicle driven by her daughter, Jane Baker. Baker had liability limits of $300,000. Due to the presence of multiple claimants, Baker's insurer paid Fox's estate $92,500 of the $300,000. Fox had at least twelve next of kin, including the plaintiff Netzley, one of Fox's daughters. Out of the $92,500 Fox's estate recovered from Baker's insurer, Netzley received approximately $18,500. The next of kin had alleged damages in excess of $400,000.
Netzley was insured under an Auto-Owners policy of automobile insurance with underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. Netzley's limits were identical to the tortfeasor's limits.[14] Apparently, both Fox's estate and Netzley filed a claim with Auto-Owners for underinsured motorist benefits. Auto-Owners denied the claim, stating that because Netzley's UIM limits were identical to the tortfeasor's limits, Fox's estate and Netzley were not entitled to recover further sums from Auto-Owners.
Following the denial of their claims, Fox's estate and Netzley filed a declaratory judgment action claiming entitlement to $300,000 in UIM coverage from Auto-Owners. The trial court granted summary judgment in favor of the insurer.
On appeal, Fox's estate and Netzley argued that under the S.B. 20 version of R.C. 3937.18, "an insured can collect UIM benefits even if the policy limits of the insured's policy are equal to the tortfeasor's policy limits." The estate and Netzley asserted that by retaining the phrase "available for payment," in R.C. 3937.18(A)(2), the General Assembly intended that the comparison should not be policy limit to policy limit, but should be a comparison between the UIM limits and the amounts "actually available" for payment from the tortfeasor's insurer.
Thus, Netzley argued that because she only received $18,500 from the tortfeasor's insurer and because her underinsured motorist coverage had limits of $100,000 per person and $300,000 per occurrence, she should be entitled to recover up to the limits of her own insurance. Netzley further argued that even factoring in the estate's recovery of $92,500, her limits have not been exhausted.
The appellate court held that the trial court improperly granted summary judgment in the insurer's favor. The court noted that a copy of Netzley's insurance policy had not been provided to the trial court and the appellate court could not determine "who was considered an `insured' under the policy, nor * * * how the policy defines such terms as limits of liability, per person limits, and so forth." Thus, the court remanded the matter to the trial court with the following "guidance."
The Fox court noted the previous holdings of the Ohio Supreme Court interpreting former R.C. 3937.18(A)(2), specifically, Hill and Andrews, and that on October 20, 1994, the General Assembly amended R.C.3937.18(A)(2). With respect to the amendment, the Fox court noted:
 "Unfortunately, the legislature could have been more clear, both in the wording of the amended statute and in its discussion of legislative intent. In this context, our statutory construction begins with the fact that the legislature is presumed to be `fully aware of any prior judicial interpretation of an existing statute when enacting an amendment.' * * * As a result, we must presume that the legislature was aware of the Andrews decision and its interpretation of the term `available for payment' when the amendments to R.C. 3937.18 were enacted. Despite this knowledge, the legislature left the pertinent portions of R.C. 3937.18(A)(2) unchanged."
(Citation omitted.)
The Fox court recognized that the legislature left the following language unchanged in the amended version: "where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage." TheFox court therefore concluded:
 "[I]n light of the previous judicial interpretation of the phrase `available for payment' in Andrews, we must conclude that the legislature agreed with the Andrews
interpretation, i.e., that the comparison is not of limits only, but is a comparison between the UIM limits and the amounts actually available for payment under the tortfeasor's policy."
Although the Fox court recognized that the amended version of R.C.3937.18(A)(2) added "excess insurance" language,[15] the court did not believe that the addition of the "excess insurance" language necessarily overturned the Andrews holding. The Fox court stated that in its opinion, the "excess insurance" language
 "was added for purposes of overturning the broad holding of Savoie, which significantly extended underinsured motorists coverage by creating a new category of excess insurance and by eliminating the opportunity for insurers to offset sums paid by the liability insurer. By the same token, we do not believe this sentence was intended to overturn the decision in Andrews, which did not interpret the underinsured motorists statute as providing excess coverage, but instead focused on the fact that an insured should not be penalized because the tortfeasor has insurance."
The Fox court further explained that to accept the argument that a strict policy limit to policy limit comparison is appropriate would result in an insured being prohibited
 "from any recovery under UIM coverage, regardless of the amount of recovery from the tortfeasor, so long as the policy limits of the tortfeasor's policy are identical to the UIM policy limits. Using a concrete example to illustrate-if the limits of both the tortfeasor's policy and the UIM policy are $100,000/$300,000 (as in the present case), and the injured party receives only $10,000 from the tortfeasor due to the number of liability claimants, [the insurer] believes the injured party should receive nothing at all from the UIM policy. It seems to us, however, that this type of situation is the very reason consumers purchase UIM coverage."
The Fox court further rejected the argument that the elimination in S.B. 20 of the "amounts actually recovered" language reflects the General Assembly's intent that the comparison be of limits to limits. The court reiterated its position that the General Assembly would have been aware of the Andrews decision and that if the General Assembly had intended the comparison to be a limits to limits comparison, it should have been more explicit.
As further support for its rejection of the argument that the amended version of R.C. 3937.18(A)(2) provides for a limit to limit comparison, the Fox court stated:
 "[W]e do not believe that compensating an insured up to the policy limits (and allowing setoff of amounts recovered from the tortfeasor, if the policy so provides) converts an UIM policy into excess insurance. Instead, the insured is simply being given what is mandated by statute, i.e., a recovery that is neither greater nor less than what the insured would receive if the tortfeasor had no insurance."
The court thus concluded:
 "[I]f Fox's estate is considered an insured under the [Auto-Owners] policy, the amount owed by Auto-Owners could be limited to the difference between the estate's recovery from the tortfeasor and the UIM limits of the Auto Owners' policy * * *. On the other hand, if only Netzley is defined as an insured under the policy, Netzley could be entitled to recover the difference between the amount she received from the tortfeasor and the UIM policy limits."
A careful review of Fox reveals that the court did not necessarily conclude that an insurer could never set off amounts available to its insured. Rather, Fox states that when multiple UIM insureds split the amounts available under the tortfeasor's policy, the insurer cannot always set off the amount available under the tortfeasor's policy. If each UIM insured carries his or her own insurance policy, it would seem incongruous to allow the insurer, in such a situation, to set off the liability limit of the tortfeasor's insurance. If its insured collects the entire amount of the tortfeasor's insurance, then it would be logical to conclude that the insurer could set off the entire amount of the tortfeasor's liability insurance. If, however, due to the presence of multiple unrelated[16] claimants, its insured does not receive all of the tortfeasor's limits and its insured's UIM coverage exceeds the amount its insured received under the tortfeasor's policy, the insurer may set off only the amount that its insured actually received, not the amount that all claimants received (which the insurers argue is the "amounts available for payment," regardless of who actually receives the amounts).[17]
Therefore, an insurer may not set off the entire amounts available under the tortfeasor's policy if to do so would result in its insured receiving less than what the insured would have received had the tortfeasor been uninsured. If the insured contracted for $100,000 per person and $300,000 per accident UI/UIM coverage, and the insured receives only $10,000 of the $100,000 available under the tortfeasor's insurance, to permit the insurer to set off the entire amount of the tortfeasor's limit would result in the insured receiving less than what the insured would have received had the insured been injured by an uninsured motorist. R.C. 3937.18(A)(2) does not permit the insured to receive less than what the insured would have received had the insured been injured by an uninsured motorist. See R.C. 3937.18(A)(2) (stating that "[u]nderinsured motorist coverage * * * shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident"); Moore,supra.
To construe R.C. 3937.18(A)(2) as providing for a strict policy limit to policy limit comparison in all situations would be contrary to the statute's stated purpose of underinsured motorist coverage. Because such an interpretation would be "contrary to the coverage mandated by R.C.3937.18(A)," a policy provision providing for a strict policy limit to policy limit would therefore be unenforceable. See Moore,88 Ohio St.3d at 28-29, 723 N.E.2d at 99.
We therefore disagree with appellees' suggestion that R.C. 3937.18(A)(2) permits a strict policy limit to policy limit comparison in all situations. Rather, the statute provides a set off of the amount available to an insured or insureds. An insurer may not set off amounts available to other claimants who are not "insureds" under its policy.
For example, in King v. Western Reserve Group (1997), 125 Ohio App.3d 1,9, 707 N.E.2d 947, 952 the court explained that the phrase "available for payment" as used in R.C. 3937.18(A)(2) "can only mean available for payment to the insureds." The court recognized:
 "It mak[es] little sense to permit an insurer to offset from its obligations amounts that a tortfeasor's carrier happens to have paid to injured parties other than the insureds. Indeed * * * if [the insurer] could deduct payments made to claimants other than the insureds, then under certain circumstances the insureds would receive nothing from their underinsured motorist coverage and nothing from the tortfeasor."
Id.; see, also, Butler-Peak v. Cunningham (June 30, 2000), Clark App. No. 99-CA-86, unreported. Cf. Berry v. Przyborowski (Nov. 19, 1999), Miami App. No. 99-CA-21, unreported (stating that a policy limit to policy limit comparison would be appropriate when all claimants who received amounts under tortfeasor's policy all are seeking UIM claims under the same policy: If all claimants "are claiming proceeds from the same policy, the amount of set-off is the entire amount paid to them collectively, rather than as individuals").
In the case at bar, appellants all are seeking liability coverage under the tortfeasor's policy and all appellants are seeking UIM coverage under the same policies. Thus, the situation is more similar to Littrell than to Fox. Like Littrell, the case sub judice involves multiple claimants who have exhausted the tortfeasor's limits and who all now seek UIM coverage under the same policies. Like Littrell, each appellant falls within a definition of an insured under each of the policies. UnlikeFox, the facts in the present case do not reveal that any one of the appellants potentially may not fall within the definition of an insured under any of the applicable policies. Thus, we believe that under the facts presented in the case at bar, R.C. 3937.18(A)(2) permits the insurers to aggregate appellants' claims and to set off the amounts collectively available to appellants under all applicable automobile liability policies. Consequently, we disagree with appellants thatAndrews controls the disposition of the case at bar.
Having determined that Ohio law permits an insurer to set off amounts available to its insured under other applicable automobile liability policies, we now examine the Farmer's and the State Farm's policies to ascertain whether the policies provide for such a set off.
Farmer's policy provides:
 "With respect to coverage provided for damages an insured is entitled to recover from the owner or operator of an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible."
Farmer's policy further provides:
 "If there is other applicable insurance available under one or more policies or provisions of coverage:
 A. Any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or under any other insurance providing coverage on either a primary or an excess basis."
State Farm's policy provides:
 "[T]he most we pay for all damages arising out of and due to bodily injury to one person is the lesser of:
 1. the difference between the `each person' limits of liability of this coverage and the amount paid for that bodily injury by or for any person or organization who is or may be held legally liable for the bodily injury; or
 2. The difference between the amount of damages for such bodily injury, and the amount paid for that bodily injury by or for any person or organization who is or who may be held legally liable for the bodily injury."
The language of the foregoing policy provisions clearly and unambiguously permits the insurers to set off amounts available to its insured under other applicable policies. Consequently, we disagree with appellants that the trial court improperly concluded that: (1) Farmers may set off the $12,500 available to appellants under Harber's insurance; and (2) State Farm may set off the $12,500 available to appellants under Harber's insurance and the $12,500 available to appellants under the Farmer's policy.
 E. CONSTITUTIONAL CLAIMS
Appellants finally argue that S.B. 20 suffers from various constitutional infirmities. We decline to address appellants' constitutional arguments.
When challenging the constitutionality of a statute, the complaining party must raise the constitutionality issue in the complaint or in an amended complaint and must serve the Attorney General with the complaint. Cicco v. Stockmaster (2000), 89 Ohio St.3d 95, 97,728 N.E.2d 1066, 1069. Failure to do so deprives the trial court of jurisdiction. Id. As the court explained in Cicco:
 "[A] party who is challenging the constitutionality of a statute must assert the claim in the complaint (or other initial pleading) or amendment thereto, and must serve the pleading upon the Attorney General in accordance with methods set forth in Civ.R. 4.1 in order to vest a trial court with jurisdiction under R.C. 2721.12."
Id.
In the case at bar, appellants first raised their constitutional issues in the motion for summary judgment. Thus, because appellants failed to raise the constitutional issues in a complaint or in an amended complaint, and because appellants failed to serve the Attorney General, this issue is not properly before us and the trial court lacked jurisdiction to consider the issue.[18] To this limited extent, therefore, we reverse and vacate that portion of the trial court's judgment addressing appellants' constitutional claims.
Although we decline to address appellants' constitutional arguments, we note that other courts have rejected similar arguments. See, e.g., Beaglev. Walden (1997), 78 Ohio St.3d 59, 676 N.E.2d 506; Maletz v. StateAuto. Mut. Ins. Co. (Nov. 8, 2000), Medina App. No. 2991-M, unreported;Carruth, supra; Washington v. Citizens Security Mut. Ins. Co. (Sept. 21, 2000), Cuyahoga App. No. 76082, unreported; Lyles v. Glover (Mar. 27, 2000), Allen App. No. 1-99-104, unreported.
Accordingly, based upon the foregoing reasons we overrule appellants' sole assignment of error and affirm, in part, and reverse, in part, the trial court's judgment.
It is ordered that the judgment be affirmed in part and reversed in part. Appellees shall recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Concurs in Judgment Only
Kline, J.: Concurs in Judgment Opinion
 _______________________________ Peter B. Abele, Presiding Judge
[1] Appellants' complaint identified Westfield Insurance Company as Lloyd Tatman's insurer. Ohio Farmers Insurance Company, one of the Westfield Companies, actually insured Tatman.
[2] Harber is not a party to the instant appeal.
[3] The court stated: "[l]iability policy provisions which purport to consolidate wrongful death damages suffered by individuals are unenforceable because they directly violate the policy expressed by the General Assembly and this court." Id., 67 Ohio St.3d at 503,620 N.E.2d at 813. Note that such provisions violate public policy expressed by "this court"; perhaps this implies that any attempt by the legislature to permit insurers to include such provisions would be struck down by the court because it would violate the public policy as expressed by "th[e] court."
[4] The conflict certified concerns the "available for payment" language discussed infra.
[5] We note that effective September 21, 2000, the Ohio General Assembly amended R.C. 3937.18. See S.B. 267. Unless otherwise noted, the statutes mentioned in this opinion refer to the statutes enacted as part of S.B. 20; the statutes mentioned as "former R.C. 3937.18" refer to the statutes as they existed prior to the enactment of S.B. 20.
[6] In Sexton, the court stated that an insurer could not require its insured to suffer bodily injury in order to be entitled to uninsured motorist coverage.
[7] Moore applies in the following situation: A is hit by an uninsured/underinsured motorist and suffers bodily injury in an accident. B is A's parent. B carries underinsured motorist coverage with Company X. A is not defined as an insured under B's insurance policy. B seeks uninsured/underinsured motorist coverage from Company X due to the loss of consortium B suffered as a result of A's injury. Company X denies B's claim on the basis that B did not suffer bodily injury. Moore states that Company X cannot deny B's claim simply because B did not suffer bodily injury.
This is not the fact pattern in the case at bar. In the case at bar, we have: A, the tortfeasor; B, the driver of the car that the tortfeasor hit; C, the person who suffered bodily injury; and D and E, C's parents. A is insured by Company X. B is insured by Company Y. D is insured by Company Z; C and E fall within the definition of an insured under D's policy. D and E seek underinsured motorist coverage under the insurance policies as a result of their loss of consortium. Company X and Y have not attempted to deny C, D, or E coverage under Company X's and Company Y's policies. Company Z also has not attempted to deny C, D, or E coverage under its policy. None of the companies claim that C, D, or E is not an insured within the meaning of its policy due to D and E not suffering bodily injury. Therefore, the holding in Moore that the Ohio Revised Code does not permit an insurer to limit uninsured motorist coverage to insureds who suffer bodily injury, sickness, or disease in order to recover damages from the insurer is inapplicable.
[8] In Carruth, the appellants, the injured insured's family members, sought compensation for their loss of consortium claims. The appellants contended that each member's loss of consortium claim is a separate and distinct claim subject to separate per person limits. The tortfeasor carried liability limits of $100,000 per person and $300,000 per accident. The appellants carried underinsured motorist coverage in the amount of $50,000 per person and $100,000 per accident.
The court found Moore inapplicable and held that R.C. 3937.18(H) permitted the appellants' insurer to consolidate the consortium claims with the bodily injury claims and to subject both to the per person limit.
[9] In Campbell, the spouse of the person who suffered bodily injury sought underinsured motorists coverage for the spouse's loss of consortium. The tortfeasor had liability limits of $12,500 per person and $25,000 per occurrence. The tortfeasor paid the injured spouse $12,500. The spouse carried underinsured motorist coverage in the same amount as the tortfeasor's liability limits. The spouse argued that Schaefer
applied. The court of appeals disagreed, noting that R.C. 3937.18(H) and R.C. 3937.44 expressly permit insurers to consolidate all claims arising out of one person's bodily injury to the per person limit. Moore did not apply because the insurer did not attempt to completely prohibit the spouse from collecting underinsured motorist benefits. Rather, the insurer validly limited the amount to which the spouse was entitled.
[10] Although Plott predates Moore, Plott applied the rationale inSexton to determine that Sexton, which Moore essentially revived, applied only in situations when the insurer attempted to limit underinsured motorist coverage to insureds who suffered bodily injury. In Plott, the court held that nothing in the Ohio Revised Code prohibits insurers from aggregating all claims arising out of any insured's bodily injury and subjecting all the claims to the per person limit.
In Plott, the appellant's brother was killed in an automobile accident. The appellant sought uninsured motorist benefits from her own insurer on behalf of her deceased brother and on her own behalf. The appellant's insurance company paid the per person limits. On appeal, the appellant argued that she was entitled to the difference between the per accident limit and the per person limit under the law announced inSexton.
The appellate court found Sexton inapplicable. The court implied thatSexton did not apply because in Plott, the insurer did not require appellant to suffer bodily injury. The court noted that instead, the insurer's policy validly limited the amount of its liability for all claims arising out of the appellant's brother's bodily injury. The court noted that statutes enacted subsequent to the Sexton decision explicitly permit insurers to limit the liability for all claims arising out of one individual's bodily injury to the per person limit.
Thus, the Plott court was not faced with the exact issue presented inSexton; Sexton considered whether an insurance company could prohibit an insured who did not suffer bodily injury in an accident from recovering uninsured/underinsured motorist benefits under his or her own uninsured/underinsured motorists coverage. Sexton says nothing about whether an insurer can collectively limit all claims arising out of one person's bodily injury to the per person limit.
The Plott court also noted that the policy at issue in Sexton did not contain liability limiting language as the policy in Plott did. ThePlott court noted that the insurer's policy clearly provided that the limit for each person "is the maximum for all damages including `damages for care, loss of services, loss of consortium, arising out of bodily injury suffered by any person in any one accident.' * * * The policy also clearly provides that `we will pay no more than these maximums regardless of the number of * * * insured persons, claims, policies, or motor vehicles involved in the accident.'"
Thus, while Plott recognized that Sexton prohibited an insurer from requiring its insured to suffer bodily injury as a prerequisite to receiving underinsured motorist coverage, the Plott court further recognized that Sexton stated nothing about limiting the amount of underinsured motorist coverage available in situations when only one insured has suffered bodily injury.
[11] In Greiner v. Timm (Mar. 28, 2000), Franklin App. No. 99AP-618, unreported, a negligent uninsured motorist hit Greiner. Greiner and his wife sought uninsured motorist coverage from their insurer. The policy provided uninsured motorists coverage with limits of $100,000 per person and $300,000 per accident. The insurer paid Greiner $100,000 but denied further compensation to the wife on her claim for loss of consortium. The trial court granted summary judgment in the insurer's favor, finding that the insurer paid its liability limit.
On appeal, the Greiners argued that Ohio law requires the insurance company to treat the wife's injury separately from any claim filed by her husband. The insurance company argued that R.C. 3937.18(H) expressly authorizes it to treat all claims arising out of any one person's bodily injury to the per person limit.
The Greiners argued that Schaefer applied. In Greiner, the court noted that there may be merit to the argument that the policy behind Moore may apply. The Greiner court stated, however, "given the present state of the law, we decline to follow it." Thus, the court found Schaefer
inapplicable.
[12] We note that appellants have failed to specify what, if any, individual damages each has received under any of the applicable insurance policies. Thus, we consider appellants' argument in theory only.
[13] In Littrell v. Wigglesworth, the Ohio Supreme Court certified a conflict, recognizing the conflict between Berry v. Przyborowski (Nov. 19, 1999), Miami App. No. 99-CA-21, unreported, and Estate of Fox v.Auto-Owners Ins. (June 12, 1998), Darke App. No. 1456, unreported, discretionary appeal denied 86 Ohio St.3d 1492, 716 N.E.2d 723. SeeLittrell v. Wigglesworth (2000), 89 Ohio St.3d 1468, 732 N.E.2d 999.
[14] Although not expressly stated, apparently Baker was the tortfeasor.
[15] The amended version added the following "excess insurance" language to R.C. 3937.18(A)(2):
 Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident.
[16] Unrelated is defined in the sense that the claimants each have his or her own UIM insurance policy and the claimants do not fall within the definition of an insured under any of the other claimants' policies.
[17] For example, A, B, and C are each driving their own vehicle. A's vehicle is insured by Company X, B's vehicle is insured by Company Y and C's vehicle is insured by Company Z. C is the tortfeasor. C's liability limits are $100,000 per person and $300,000 per accident. A carries UM/UIM coverage in the amount of $50,000/$100,000. B carries UM/UIM coverage in the amount of $300,000/$600,000. A receives $50,000 from C's insurer. B receives $50,000 from C's insurer. Company X does not owe A any UIM benefits because A received from the tortfeasor the same amount she would have received had C not been insured. Company Y, however, owes B the difference between the amount B received from C's insurer ($50,000) and the amount of her UIM coverage ($300,000). This allows B to receive the amount of coverage she would have received had C been uninsured. Permitting Company Y to set off the amount of C's liability limit ($100,000) would not result in B receiving the same amount she would have received had C been uninsured. Under this situation, B would receive a total of only $250,000 when she bargained for a total of $300,000.
To sum up, an insurer can set off the amounts its own insured or insureds received under the tortfeasor's policy or any other applicable policy. The insurer cannot set off amounts that other claimants who are not insureds under its policy received from the tortfeasor's policy or other applicable policies. The insurer can set off only those amounts its own insured or insureds in a multiple claimant situation received under all other applicable policies.
[18] As a final note, we recognize the confusion present in the uninsured/underinsured motorist context. The Ohio General Assembly and the Ohio Supreme Court appear to be in a constant "tug-of-war" and have, consequently, made it "[im]possible to intelligently buy automobile insurance without the assistance of an attorney in Ohio." Maric, supra, (O'Neill, J., dissenting); Butler-Peak, supra. See, also, Geyer, Auto Insurance Tug-of-War (Sept./Oct. 2000), Ohio Lawyer 10.